GREGORIO DI LORENZO, Appellant, *v.* JOHANNA DI LORENZO, Respondent.

1. MARRIAGE, A CIVIL CONTRACT ONLY AND SUBJECT TO BE VACATED FOR FRAUD. While marriage contracts are based upon considerations peculiar to themselves and public policy is concerned with the regulation of the family relation, nevertheless the law of this state considers marriage in no other light than that of a civil contract, requiring for its validity that full and free consent which is the essence of all ordinary contracts; every misrepresentation of a material fact made with the intention to induce another to enter into an agreement and without which he would not have done so, justifies the court in vacating the agreement, and there is no valid reason for excepting the marriage contract from the general rule.

2. ANNULMENT UPON THE GROUND THAT CONSENT WAS OBTAINED BY MATERIAL MISREPRESENTATION OF FACT. Where in an action for the annulment of a marriage it appears that the consent of the plaintiff to marry the defendant was obtained by a fraudulent representation and stratagem causing him to believe that he was the father of her child, and that but for the fraud he would not have consented to the marriage, such misrepresentation must be deemed of a material nature, and under subdivision 4, of section 1743, of the Code of Civil Procedure, providing that a marriage may be annulled when the consent of one of the parties is obtained

by force, duress or fraud, the court may properly annul the marriage if it appears that the plaintiff has not, with full knowledge of the facts constituting the fraud, voluntarily cohabited with the defendant before the commencement of the action.

*di Lorenzo* v. *di Lorenzo,* 71 App. Div. 509, reversed.

(Argued March 30, 1903; decided April 28, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 23, 1902, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

This action was brought to have the marriage between the plaintiff and the defendant annulled, upon the ground that the former's consent thereto was induced by the fraud of the latter. It is alleged in the complaint, in substance, that prior to the marriage of the parties, in the city of New York, in November, 1891, the defendant falsely represented to the plaintiff that, in October, 1891, during a period of time when he was absent from the state, she had given birth to a male child, of which he was the father, whom she exhibited to him as such; that he, believing these representations and in order to legitimatize the child, was induced to marry the defendant; that without such representations he would not have made the marriage ; that the defendant's representations were false, in that she had not given birth to any child, but had fraudulently procured one to produce to the plaintiff for the purpose of inducing him to consent to marry her ; that, as a result of the stratagem he did marry her; that there has been no issue of the marriage ; that the falsity of these representations was discovered but a short time before the commencement of the action and that since their discovery he has not cohabited with the defendant. In answer to the complaint, the defendant denied so much of its allegations as related to the fraudulent representations and set up an earlier marriage with the plaintiff in 1890, which was consummated by cohabitation. After the joinder of issue, the defendant moved for a jury trial and the trial court framed specific

questions of fact, which were tried out before a jury, who rendered a verdict upon each. The first question was, whether the parties had been earlier married by an Italian minister, as alleged by the defendant. To this question the jury answered, " no." The second question was, whether, in October, 1891, or prior thereto, the defendant, for the purpose of inducing the plaintiff to marry her, falsely and fraudulently represented to him that, during plaintiff's absence from the state, she had given birth to a male child, of which he was the father and whether she then and there produced and exhibited said child to him. To this question the jury answered, " yes." The third question was, whether the plaintiff, relying upon such representations of the defendant and believing the same to be true, married the defendant in November, 1891, at the city of New York. To this question the jury answered, " yes." The fourth question was, whether said defendant gave birth to said male child, or to any child, on or about October 5th, 1891. To this question the jury answered, " no." Upon the action coming on regularly to be heard, at a Special Term, the court adopted these findings of the jury and filed a decision, embodying the facts established by the verdict, and, further, finding that, at the time of the marriage, the plaintiff was seized of real estate of the value of $65,000, as the defendant well knew ; that there had not been any issue of the marriage ; that, at the time of the marriage, the parties were, and ever since have been, residents of the state ; that since the discovery of the defendant's fraud the plaintiff had not cohabited with her and that the plaintiff was entitled to a judgment annulling his marriage with the defendant. The judgment entered upon the decision was appealed from by the defendant to the Appellate Division, in the second department ; where it was reversed and a new trial was ordered. From the order of reversal the plaintiff has appealed to this court.

*Byron Traver* for appellant. The trick of defendant in obtaining plaintiff's consent — the very essence of a marriage

contract — was an intentional fraud upon him, which justified the annulment of the marriage. (*People* v. *Oyer & Terminer*, 83 N. Y. 436; *Mayer* v. *Dean*, 115 N. Y. 556; *Van Schaick* v. *R. R. Co.*, 38 N. Y. 346; *Thomas* v. *People*, 34 N. Y. 351; *Miller* v. *Lockwood*, 32 N. Y. 293; *Redfern* v. *Cornell*, 6 App. Div. 436; *Keyes* v. *Keyes*, 6 Misc. Rep. 355; *Kujek* v. *Goldman*, 150 N. Y. 176; *Schumacher* v. *Mather*, 133 N. Y. 590; *Lawler* v. *Hosper*, 3 Atk. 279.) Parties cannot become husband and wife without their mutual consent. Consent is the very essence of a marriage contract; without it the marriage is null and void. (2 Kent's Com. 76, 77; *Countess of Portsmouth's Case*, 1 Hagg. Eccl. Rep. 355; *Kujek* v. *Goldman*, 150 N. Y. 176; *Hayes* v. *People*, 25 N. Y. 390; *Clayton* v. *Waddell*, 4 N. Y. 230; *Ferlat* v. *Gojon*, Hopk. Ch. 478; *Scott* v. *Schufeldt*, 5 Paige, 43; *Griffin* v. *Griffin*, 47 N. Y. 138; *Hides* v. *Hides*, 65 How. Pr. 17; *Moot* v. *Moot*, 37 Hun, 288; *Keyes* v. *Keyes*, 6 Misc. Rep. 355.)

*Edward Hymes, Emanuel M. Friend* and *Michael Schaap* for respondent. No cause of action was alleged in the complaint, or proven upon the trial. (*Donovan* v. *Donovan*, 9 Allen, 140; *Foss* v. *Foss*, 12 Allen, 26; *Crehore* v. *Crehore*, 97 Mass. 330; *States* v. *States*, 37 N. J. Eq. 195; *Seilheimer* v. *Seilheimer*, 50 N. J. Eq. 412; *Hoffman* v. *Hoffman*, 30 Penn. St. 417; *Franke* v. *Franke*, 18 L. R. A. 375; *Scroggins* v. *Scroggins*, 3 Dev. 535; *Barden* v. *Barden*, 3 Dev. 548; *Long* v. *Long*, 77 N. C. 304.)

GRAY, J. The order of the Appellate Division reversed upon questions of law, only, and the facts as found by the trial court, being undisturbed by the determination of the Appellate Division, must be taken to be true.

The theory of the decision by the Appellate Division, as I understand it, is that the fraud in this case was insufficient to warrant the court in annulling the marriage between the parties and that the considerations of public policy, which environ the marriage relation, as a status, so far take it out of

the domain of ordinary contracts as to render this conclusion necessary. It was considered that the representations of the defendant " worked no wrong, for which the law, as at present established," would afford any remedy, in the right to an annulment of the marriage. The prevailing opinion of the learned court is very elaborate and clear, and its conclusions are deliberately reached upon a careful consideration of the authorities. In my opinion, however, it errs in failing to give due effect to the statutory provision, relating to the annulment of a marriage for fraud, and in not giving to the element of a free and true consent in a marriage contract that high importance which it has in contracts generally.

The question, therefore, is whether, upon facts establishing that the consent of the plaintiff to marry the defendant was obtained by a fraudulent representation and by a stratagem, causing him to believe that he was the father of the defendant's child, the fraud was of such a material nature, as to warrant the court in decreeing the annulment of the marriage contract. The law of this state, with respect to matrimonial actions, is regulated by statute. The Revised Statutes, early, conferred upon the chancellor the jurisdiction to declare a marriage contract void and to annul the marriage, (2 R. S. 142), and the Code of Civil Procedure, into which their provisions were carried, confers a general jurisdiction upon the courts of the state, which may be called into exercise for certain causes existing at the time of the marriage. One of those causes is stated to be when " the consent of one of the parties was obtained by force, duress, or fraud ; " and the only limitation imposed, where the action is on the ground of fraud, is that it must appear that the parties have not, at any time before the commencement of the action, " voluntarily cohabited as husband and wife, with a full knowledge of the facts constituting the fraud." (Code of Civ. Pro. §§ 1743, subdiv. 4, and 1750.) This language is broad and warrants but the one reasonable construction, that the fraud must be material, to that degree that, had it not been practiced, the party deceived would not have consented to the marriage.

The statutes of this state declare that marriage, so far as its validity in law is concerned, is a civil contract, to which the consent of parties, capable in law of contracting, is essential. (2 R. S. 138.) It, certainly, does differ from ordinary common-law contracts, by reason of its subject-matter and of the supervision which the state exercises over the marriage relation, which the contract institutes. In such respects, it is *sui generis.* While the marriage relation, in its legal aspect, has no peculiar sanctity, as a social institution, a due regard for its consequences and for the orderly constitution of society has caused it to be regulated by laws, in its conduct as in its dissolution. Judge STORY said of it that it is "something more than a mere contract; it is rather to be deemed an institution of society, founded upon the consent and contract of the parties and in this view it has some peculiarities in its nature, character, operation and extent of obligation, different from what belong to ordinary contracts." (Story's Conflict of Laws, § 108, n.) While, then, it is true that marriage contracts are based upon considerations peculiar to themselves and that public policy is concerned with the regulation of the family relation, nevertheless, our law considers marriage in no other light than as a civil contract. (*Kujek* v. *Goldman,* 150 N. Y. 176.) The free and full consent, which is of the esssence of all ordinary contracts, is expressly made by the statute necessary to the validity of the marriage contract. The minds of the parties must meet in one intention. It is a general rule that every misrepresentation of a material fact, made with the intention to induce another to enter into an agreement and without which he would not have done so, justifies the court in vacating the agreement. It is obvious that no one would obligate himself by a contract, if he knew that a material representation, entering into the reason for his consent, was untrue. There is no valid reason for excepting the marriage contract from the general rule.

In this case, the representation of the defendant was as to a fact, except for the truth of which the necessary consent of the plaintiff would not have been obtained to the marriage.

It was designed to create a state of mind in the plaintiff, the operation of which would be to yield a consent to marry the defendant, in the belief that he was rectifying a great wrong. The minds of the parties did not meet upon a common basis of operation. The artifice was such as to deceive a reasonably prudent person and to appeal to his sense of honor and of duty. The plaintiff had a right to rely upon the defendant's statement of a fact, the truth of which was known to her and unknown to him, and he was under no obligation to verify a statement, to the truth of which she had pledged herself. It was a gross fraud and, upon reason, as upon authority, I think it afforded a sufficient ground for a decree annulling the marriage contract. The jurisdiction of a court of equity to annul a marriage, for fraud in obtaining it, was early asserted in this state by the Court of Chancery, at a time when the limited powers of courts of law were inadequate for the purpose. This jurisdiction was expressly rested upon the general power to vacate contracts in all cases, where they had been procured by fraud. From this general jurisdiction of equity a contract of marriage was not regarded as being excepted, when the assent to it was the result of artifice, or of gross fraud. (See *Ferlat* v. *Gojon*, Hopkins Chy. 478; *Burtis* v. *Burtis*, Id. 557.) If, as it was observed by Chancellor SAND-FORD in *Ferlat* v. *Gojon*, (*supra*), no instance of the exercise of this jurisdiction was to be found in England, it was because the Ecclesiastical, or Spiritual, Courts had cognizance of matrimonial causes; but, he said, " the jurisdiction of equity, in cases of fraudulent contracts, seems sufficiently comprehensive to include the contract of marriage."

In *Scott* v. *Shufeldt*, (5 Paige Chy. 43), the action was to annul a marriage, which the plaintiff had been induced to enter into in order to escape proceedings under the bastardy act; which the defendant had brought against him, upon her oath that he was the father of her child. He, subsequently, ascertained that the child was by a negro. Chancellor WAL-WORTH held that, " if the mother, at the time she charged him, (the complainant), as the putative father and induced him to

marry her, under the supposition that the child might be his, knowing that it was not his child, but that it was the child of a negro, she   *   *   *   intentionally defrauded the complainant in such a manner as to authorize the court to declare the marriage contract a nullity." ⎨ The power that was deemed by the Court of Chancery to be inherent in the court, in the ·exercise of its equitable jurisdiction in cases of fraud, was, soon thereafter, expressly conferred upon the courts ˙by the legislature of the state⎬ In *Blank* v. *Blank*, (107 N. Y. 91), the action was to set aside a judgment annulling a marriage contract between the parties, upon the ground that the plaintiff, (the former wife), had been induced, by untrue statements as to the law, to refrain from defending the action.   The fraud, upon which the action to annul the marriage had been based, consisted in the woman's representation that she was a widow, whereas she had been collusively divorced from a former husband, who was still living.   In affirming the judgment in favor of the defendant, it was said by Judge RAPALLO, in the opinion, that, "whether the marriage between the defendant and the plaintiff was legal, or illegal, as matter of law, the fraud, by which ˙she was charged with having induced the defendant to enter into the contract, was sufficient to justify the court in setting it aside, and she does not in any manner attempt to deny that she was guilty of the fraud charged."

Our attention has been called to cases in the courts of this state and of other states, which seem to hold a different doctrine upon the subject of the judicial annulment of a marriage contract.   Whatever may be said in explanation, or in differentiation, I think it is sufficient that we rely upon the plain provision of our statute and upon the application to the case of a contract of marriage of those salutary ˌand fundamental rules, which are applicable to contracts generally when determining their validity. ⎝If the plaintiff proves to the satisfaction ˌof the court that, through misrepresentation of some fact, which was an essential element in the giving of his consent to the contract of marriage and which was of such a

nature as to deceive an ordinarily prudent person, he has been victimized, the court is empowered to annul the marriage. Such was the judgment of the trial court upon the facts in this case and I think that the learned justices of the Appellate Division, who concurred in reversing that judgment, were in error, in holding that the law of this state afforded no remedy to the plaintiff.

The order appealed from should be reversed and the judgment entered upon the findings of the Special Term should be affirmed, with costs to the plaintiff in the Appellate Division and in this court.

PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN, CULLEN and WERNER, JJ., concur.

Order reversed, etc.