### BAHRENBURG v. BAHRENBURG.

(Supreme Court, Special Term, New York County. December 21, 1914.)

1. MARRIAGE (§ 58*)—ANNULMENT—FRAUD.

A misrepresentation, to be ground for annulment of marriage, must not only have been as to a fact essential to plaintiff's assenting to the marriage, but also of such a nature as to deceive a person of ordinary prudence.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 115–123; Dec. Dig. § 58.*]

2. MARRIAGE (§ 58*)—ANNULMENT—FRAUD.

Plaintiff will not be granted annulment of his marriage on the ground of an alleged, but denied, misrepresentation of defendant that her child was born to her in wedlock with F., though she had never been married; he before his marriage knowing she had been unchaste with, at least one other besides himself, also the time and place of the alleged marriage with F., and the marriage license stating she had not been married.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 115–123; Dec. Dig. § 58.*]

Action by Frederick W. Bahrenburg against Felice J. Bahrenburg. Judgment for defendant.

Andrew F. Van Thun, Jr., and Stephen C. Baldwin, both of Brooklyn, for plaintiff.

Henry Stanley Renaud, of New York City, for defendant.

BLANCHARD, J.   This is an action for the annulment of a marriage upon the ground of fraud.  At the time the parties were married the defendant was the mother of an illegitimate child.  Plaintiff bases his claim of fraud upon the allegation that the defendant misrepresented to him the status of this child; that on many occasions prior to the marriage, when he questioned her directly upon the point, she falsely represented to him that the child had been born in lawful wedlock to her and one Farrington, and that she was his widow.  The plaintiff urges that the misrepresentation was as to a material fact, the truth of which, had it not been misrepresented, would have precluded him from entering into the contract of marriage with the defendant, and that he is therefore entitled under the law to the relief he seeks.  The plaintiff admits that at the time of his marriage to the defendant he knew of her unchaste character, not only by reason of his relations with her prior · thereto, but by the fact that she had confided in him that she had been intimate with a man named Ward.  The defendant, while admitting that before the marriage she had not confided in her husband to the fullest extent in regard to her antenuptial unchastity, denies having made the misrepresentation charged, and alleges that in marrying her the plaintiff did so with full knowledge of the status of the child.

[1, 2]  The general rule enunciated in Di Lorenzo's Case, 174 N. Y. 467, 472, 67 N. E. 63, 64 (63 L. R. A. 92, 95 Am. St. Rep. 609), that "every misrepresentation of a material fact, made with the intention to induce another to enter into an agreement and without which he would not have done so, justifies the court in vacating the agreement," is claimed by the plaintiff to warrant a decision favorable to him in this case.  Although the Di Lorenzo Case speaks as above, it would seem from an examination of the opinion that the decision in that case was predicated as well upon another essential factor.  Judge Gray, writing for the court, which unanimously decreed an annulment, said at page 473 of 174 N. Y., at page 65 of 67 N. E. (63 L. R. A. 92, 95 Am. St. Rep. 609):

"The artifice was such as to deceive a reasonably prudent person and to appeal to his sense of honor and of duty."

And again, at page 474 of 174 N Y., at page 65 of 67 N. E. (63 L. R. A. 92, 95 Am. St. Rep. 609):

"If the plaintiff proves to the satisfaction of the court that through misrepresentation of some fact which was an essential element in the giving of his consent to the contract of marriage, and which was of such a nature as to deceive an ordinarily prudent person, he has been victimized, the court is empowered to annul the marriage."

A reasonable interpretation of the Di Lorenzo Case, therefore, is that in order for the court to be authorized to grant an annulment of a marriage a plaintiff must show to the court, not only that the misrepresentation complained of was as to a fact which was an essential element in the giving of his consent to the contract of marriage, but also that it

was of such nature as to deceive a person of ordinary prudence. Assuming the plaintiff's version of the facts to be correct, he has failed in this action to sustain the burden thus imposed upon him. He has told the court that the status of the defendant's child was very material to him. Yet, knowing that the defendant had been unchaste, not only with himself, but with at least one other man, and with the knowledge in his possession as to the place where and the year in which the defendant claimed that her ceremonial marriage to Farrington had taken place, he made no effort to verify her statement. Under all the surrounding circumstances disclosed by the record in this case, if ever a man was put upon his guard, it was this plaintiff. Surely his was not the conduct of "an ordinarily prudent person," but rather of one blindly credulous, and it is not the province of a court of equity to aid such.

Even if the alleged misrepresentation was calculated to deceive a man of ordinary prudence, it is doubtful whether the relief prayed for could be granted. While it can be conceived that a man might consent to marry a woman whom he knows to be unchaste, and yet withhold his consent if he knew her child to be illegitimate, it is a grave question whether, from the language of the prevailing opinion in Domschke v. Domschke, 138 App. Div. 454, 122 N. Y. Supp. 892, relied upon by both parties for judgment, the fact of his knowledge of the defendant's prior unchastity does not do away with the materiality of the misrepresentation from the viewpoint of the law. The facts in the Domschke Case closely resemble those at bar, except in one important particular. The misrepresentation, as in this case, concerned the status of the defendant's child, but there was no knowledge on the plaintiff's part of the prior unchastity of the defendant. An annulment was granted by a divided court. Justice Jenks in the prevailing opinion says, at page 456, of 138 App. Div., at page 894 of 122 N. Y. Supp.:

"It is quite true that such a representation is not as to the essentialia of the marriage contract, for previous chastity is not a necessary qualification for cohabitation or for the full discharge of the duties of consortium. * * * Cannot a man regard chastity as an essential qualification of the woman he proposes to marry, and be unwilling to take even an Aspasia to his bed and board?"

And again at page 457 of 138 App. Div., at page 894 of 122 N. Y. Supp., he says:

"* * * If a man consent to contract to marry a woman who falsely represents herself as chaste, and yet marries her who has been unchaste, he may thereby be induced to agree to a contract which necessarily requires personal performance by one who is of a different status than he was led to believe."

From the general tenor of Justice Jenks' opinion it would seem that the court did not consider the status of the child as an aggravating circumstance of the misrepresentation, but rather as an element of the unchastity of the defendant. A similar view was taken by Judge Pryor in Shrady v. Logan, 17 Misc. Rep. 330, 40 N. Y. Supp. 1010. As the plaintiff in this action admittedly knew prior to the marriage that the defendant was unchaste, it seems very doubtful from the foregoing whether the misrepresentation alleged herein should be regarded as

material in law. He who knowingly bathes in a polluted stream, deliberately contributing contamination to its waters, should not reasonably be surprised at any subsequent revelations as to the character or the extent of its original defilement. The effect that should be given to the fact of the plaintiff's knowledge that the defendant had been unchaste before he married her not having been precisely determined before in this state in a case of this nature, where the misrepresentation is as to the status of a child previously born to the defendant, it would seem well to refer to the expressions of opinion by the tribunals of other states. See Seilheimer v. Seilheimer, 40 N. J. Eq. 412, 2 Atl. 376; Crehore v. Crehore, 97 Mass. 330, 93 Am. Dec. 98.

While it is true that an annulment was granted in the Di Lorenzo Case, supra, where the plaintiff knew of the unchastity of the defendant by reason of his own intimacy with her, it is well to note that the fact of the illicit relation in that case went to the very essence of the misrepresentation, and from the facts peculiar to that case tended not to put the plaintiff upon his guard, but rather to cause him to place reliance in the misrepresentation complained of. The facts in the case at bar, in so far as they bear upon the question of the misrepresentation are in conflict. I do not think, however, that a detailed discussion of them would be profitable here. The plaintiff's case seems to be predicated upon the contention that there was a general scheme on the part of the defendant to misrepresent the status of her child, in order to obtain the plaintiff's consent to their marriage. It is to be noted that the misrepresentation occurred for the first time, if at all, on the occasion of the second meeting of the parties, in the summer of 1912, and from the plaintiff's own testimony it was not until the latter end of February of the next year that he proposed to marry the defendant. There was nothing in their early relations, from the circumstances disclosed by this record, to make it probable to her mind that her marriage to the plaintiff might result.

It is uncertain that the statement in the policy of insurance that the defendant was a widow was brought home to the plaintiff. If such be the case, it would seem that he placed no reliance upon it, for according to his own testimony he continued to question the defendant about the birth of her child on several occasions thereafter. The fact that the defendant, in answer to a printed question in the marriage license, described herself as never having been married before, has had great weight with me. I so expressed myself upon the trial, and the explanation offered by the plaintiff that he signed the document without having read it has failed to resolve the doubt in my mind in his favor. The very character of the instrument inclines me to this view. Upon the whole, I feel that the plaintiff has failed to establish his case by that fair preponderance of evidence required of him by law.

Judgment for the defendant. Findings passed upon. Submit judgment and fair copy of findings.