MILDRED RISS, Plaintiff, *v.* PETER RISS, Defendant.

Supreme Court, Trial and Special Term, Onondaga County, March 20, 1947.

*Thomas F. Pasqua* for plaintiff.

*Orry R. Evans* for defendant.

MALPASS, J.  The plaintiff brings this. action for the annulment of her marriage to the defendant on the ground of fraud. The marriage ceremony was performed October 14, 1944, by a Minister of the Methodist Episcopal Church.  The fraud set forth in the complaint is that prior to the marriage, the defendant promised the plaintiff that following " their marriage they would have their marriage blessed by a Catholic Priest so that their marriage would be recognized as a Catholic ceremony," and that the defendant failed to perform in accordance with said promise.

The evidence presented a rather unusual set of circumstances for the reason that it appeared that both of the parties were communicants of the Catholic Church and it was so alleged in the complaint.  The plaintiff testified that on September 1, 1944, she and the defendant talked about getting married and that

at that time she informed him she desired to be married in the Blessed Sacrament Church because she was a Catholic. She testified that he (the defendant) " did not want to talk about it right then and there, so about three weeks later, when we were in my sister's home, my sister was telling us that in order to be married in the Catholic Church, there would have to be an announcement of our banns three weeks consecutively. He said he didn't want to wait that long and he wanted to be married right away. I, (the plaintiff), told him we couldn't get married right away and he said he wanted to get married as quick — as soon as possible, so we said we would be married by the Justice of the Peace and have our marriage blessed."

The plaintiff further testified that they went to a Justice of the Peace who declined to perform the ceremony because the plaintiff was under the age of twenty-one years and that they then proceeded to the Methodist Church in Minoa, New York, where they were married by the minister of that church.

The foregoing contains all of the statements claimed to have been made by the defendant prior to the marriage ceremony. It appeared that about two months after the marriage, the defendant entered the military service and that on August 5, 1945, a child was born of the marriage. It also appeared that the defendant returned on furlough on occasions after his entry into the military service. The child died November 9, 1945. The plaintiff testified that the defendant had refused to have the marriage " blessed " and that she had not cohabited with him since September 1, 1945, on which date she claims he refused to carry out his promise. The plaintiff was corroborated to some extent by her sister, who said that about a week before the marriage she engaged in a conversation with the parties and that she (the sister), said, " If you want to get married, you have to have your banns announced three consecutive weeks before your marriage." and that the defendant said, " Well, I had rather be married that week! That was the following week. That was a week before they were married and then later on they would have their marriage blessed."

The summons and complaint were served on October 23, 1946, and the defendant appeared by an attorney who interposed no answer and although present at the trial took no part in the examination of witnesses.

In *di Lorenzo* v. *di Lorenzo* (174 N. Y. 467, 474) the court said: " If the plaintiff proves to the satisfaction of the court that, through misrepresentation of some fact, which was an essential element in the giving of his consent to the contract of

marriage and which was of such a nature as to deceive an ordinarily prudent person, he has been victimized, the court is empowered to annul the marriage.''

In my opinion the plaintiff has not brought herself within this rule. These parties were both members of the same religious faith and it is difficult to understand why they would contemplate a marriage for a period of at least six weeks and then have the marriage performed by a minister of another religious faith unless both of the parties were satisfied with such a ceremony. Certainly the plaintiff did not conduct herself as an ordinarily prudent person prior to the marriage. The evidence establishes the fact that these parties had talked about the contemplated marriage for a period of over six weeks before the ceremony was performed. There was no reason for any haste in having the ceremony performed. The claim that the requirement of the church for a delay of three weeks for the publication of the banns of marriage vanishes in the face of the undisputed fact that twice that period of time expired during which the question of marriage was discussed by the parties. The plaintiff did nothing in the way of seeking advice or counsel from her religious advisor. Under the circumstances existing the alleged misrepresentation was not of such a nature as to deceive an ordinarily prudent person.

No proof was offered upon the subject of just what steps were necessary to be taken by the defendant to have the marriage of these parties '' blessed ''. It would seem that the marriage must have been consummated in such a manner as to satisfy the laws of the Catholic Church before it would be '' blessed '' and would amount to a second ceremony. It has been held that a promise to have a second religious ceremony following another religious ceremony is not such a prenuptial fraud as would justify an annulment of a marriage. (*Borgstedt* v. *Borgstedt,* 188 Misc. 183; *Hubner* v. *Hubner,* 188 Misc. 125.)

The testimony of the plaintiff was not convincing upon the question as to whether or not the alleged promise of the defendant to have the marriage subsequently blessed was the inducement which caused the plaintiff to enter into the marriage. The only evidence in this regard was the answer of the plaintiff to a leading question asked by her counsel. This court, while recognizing the absence of any testimony contrary to plaintiff's testimony, was not convinced that defendant's failure to carry out his promise was the real reason for seeking an annulment of the marriage.

Section 1139 of the Civil Practice Act provides that a marriage should not be annulled on the ground of fraud if it appears that at any time before the commencement of the action the parties voluntarily cohabited as husband and wife with full knowledge of the facts constituting the fraud. These parties lived together for several months as man and wife prior to the defendant's entry into the armed forces, which took place in December, 1944, and the evidence shows that after his entry into the armed forces, he came home on occasional furloughs and that a child was born in August, 1945. It would seem that the plaintiff must have been fully aware of the attitude of the defendant which she now claims to be fraudulent and that her cohabitation with the defendant prevents the granting of an annulment.

The plaintiff has failed to meet the burden imposed upon her by law and the complaint is dismissed.