LORETTA R. WAFF, Plaintiff, *v.* FRED W. WAFF, Defendant.

Supreme Court, Special Term, Erie County, June 20, 1947.

*Brainard E. Prescott* for plaintiff.

No appearance for defendant.

VANDERMEULEN, J. This is an annulment action. It appears that the plaintiff was divorced from her first husband in 1930, and since that time she raised and supported her three children for seventeen years by working and operating a rooming house in that part of Buffalo, New York, known as South Buffalo. As the children became older they contributed to the support of the family. It was a harmonious family unit.

The defendant asked the plaintiff to marry him a number of times over a period of years, but on each occasion she refused, feeling her duty was to her children. In 1944 her son, Raymond, was drafted into the armed forces. At about that time the defendant again asked her to marry him. After talking the matter over with her children whose future welfare was her chief concern, she consented to marry the defendant. She informed the defendant at the time of her concern for the future welfare of her children. This was only natural for a mother of her type. He promised her that his and her home would be their home; that he would treat her children as his own. By this course, the same harmonious family unit was to be maintained.

It must be recognized that both of these persons were approaching middle age. Such a marriage is somewhat different from a union of younger individuals. The defendant well knew of the home life of the plaintiff and her children and her intense devotion to them for he had lived in the home as a boarder for a number of years. It is readily understandable under all the circumstances that she would exact a promise before agreeing to marry, that the same harmonious relationship would continue, and that the children would live in the same congenial atmosphere, and that he would furnish a good home for all. From her former refusals to marry, it can be gleaned that she was sincere in her solicitude for her family. When after the marriage, defendant's attitude and his actions were such that the family relationship between her and her children and her home life with them was virtually destroyed, she had every reason to believe that the defendant made the promise as one of the inducements for her to marry and not intending to keep it.

It might be argued that the plaintiff assumed a risk as to what unforeseen things might arise after her marriage

and the establishment of a new home. But, as stated before, the defendant had boarded with the plaintiff and her family for a number of years and he had every opportunity to know the children and the strong devotional family relationship between the plaintiff and her children. Consequently he did not enter blindly into the promise and without knowledge of what was expected of him in the event of a marriage. He was not misled in any way. Having chosen to make the promise, it was a condition for the marriage promise of the plaintiff and he was bound to keep it even in the face of subsequent difficulty.

It was said in *Shonfeld* v. *Shonfeld* (260 N. Y. 477, 478): "The action is to annul a marriage for fraud. ' Marriage,' says the statute (Dom. Rel. Law; Cons. Laws, ch. 14, § 10), ' so far as its validity in law is concerned, continues to be a civil contract, to which the consent of parties capable in law of making a contract is essential.' So it was, too, before the statute was enacted. (*Ferlat* v. *Gojon*, 1 Hopk. Ch. 478). The essentials of marriage as a civil *contract* are, therefore, (a) consent by (b) parties having statutory capacity to give it. Any lack in those essentials makes marriage void (Dom. Rel. Law, §§ 5 and 6) or voidable (Id. § 7). If either party consents by reason of fraud there is no reality of consent. Hence the marriage is voidable (Id. § 7, subd. 4) and an action may be maintained to annul it. (Civ. Pr. Act, § 1139.) While the jurisdiction of the court to annul is purely statutory (*Walter* v. *Walter*, 217 N. Y. 439) it is equitable in its nature (Cf. *Bays* v. *Bays*, 105 Misc. Rep. 492, 500), particularly where fraud is charged. (Cf. *Ferlat* v. *Gojon, supra; Fisk* v. *Fisk*, 6 App. Div. 432.) The statute is silent as to what constitutes fraud. The Legislature perhaps adopted the traditional attitude of equity, which has ever refused to define, lest the craft of man evade the definition. (*Lawley* v. *Hooper*, 3 Atk. 278.) The court is left free to meet each case as it arises and to apply to the defendant's conduct the immemorial test of fair and conscientious dealing. But fraud alone is of no avail unless followed by the statutory consequence that consent to the marriage was given by reason of it. At this point one encounters the interpretation placed upon the statute by this court in *di Lorenzo* v. *di Lorenzo* (174 N. Y. 467). Not every fraud by reason of which the particular individual may have given consent to the marriage is an adequate basis for annulment. On the other hand, the fraud need not necessarily concern what is commonly called the essentials of the marriage *relation*

—the rights and duties connected with cohabitation and consortium attached by law to the marital status. (*di Lorenzo* v. *di Lorenzo, supra; Beard* v. *Beard,* 238 N. Y. 599; *Domschke* v. *Domschke,* 138 App. Div. 454.)

" Any fraud is adequate which is ' material, to that degree that, had it not been practiced, the party deceived would not have consented to the marriage ' (*di Lorenzo* v. *di Lorenzo, supra,* p. 471), and is ' of such a nature as to deceive an ordinarily prudent person.' "

The plaintiff is entitled to judgment annulling the marriage.