ANN L. KING, Plaintiff, *v.* JOHN X. KING, Defendant.

Supreme Court, Special Term, Albany County, July 6, 1950.

*Thomas A. Allen* for plaintiff.

No appearance for defendant.

BOOKSTEIN, J. The parties were married July 2, 1943. A child was born of the marriage December 16, 1944. The wife now seeks an annulment on the ground of fraud. The husband does not contest the action.

The alleged fraud was that defendant, prior to marriage, promised the plaintiff that after he got out of service, " we

would have a home and children " and that plaintiff " wouldn't have to work any more ".

Defendant was in the service until July, 1945, and plaintiff received her allotment from the Government during the period of military service, during which time she lived with her mother.

After the termination of military service, defendant went to Las Vegas, Nevada, where he remained until October, 1945, when he came to New York where he remained until January, 1946, at which time, when he was asked by plaintiff about furnishing a home, defendant stated he was not yet established, the truth of which is not denied. Thereafter, defendant went to Los Angeles, California, where he remained until April, 1947, and then proceeded to Phoenix, Arizona.

Defendant was a newspaper man and his trips to the various cities referred to were for the purpose of working there in his trade or profession.

At Phoenix he wrote plaintiff asking her to join him there, which she did and there lived with him in a furnished apartment until May, 1948. When he left Phoenix bound for San Diego, California, plaintiff accompanied him and both lived there with plaintiff's sister. They remained there until November, 1948, when they came to New York and lived together at the home of defendant's mother until March, 1949.

Plaintiff claims that while living with defendant's mother, she reminded defendant " just about every day " that he had promised to furnish a home and he finally told her that he " didn't intend to furnish a home and he never intended to ", whereupon she left and came to live at her mother's home in Albany. " Actionable false representations must be of existing facts ". (*Ball* v. *Gerard*, 160 App. Div. 619, 622, affd. 221 N. Y. 665.)

Here there is no misrepresentation of an existing fact, unless it be the intention of defendant, when he made the alleged promise.

A statement by one that he intends to do a certain thing, when he then had an existing intention not to do such thing, is a false statement of fact, and hence constitutes a misrepresentation or false representation. (*Deyo* v. *Hudson*, 225 N. Y. 602; *Adams* v. *Gillig*, 199 N. Y. 314; *Ritzwoller* v. *Lurie*, 225 N. Y. 464.)

It is difficult reasonably to draw the inference from the evidence in this case that there was a fraudulent intent not to keep the promise when made. For aught that appears there-

from, defendant had every intention of keeping his promise. Fraudulent intent may not reasonably be inferred from representations entirely promissory in character. (*Hobaica* v. *Byrne*, 216 App. Div. 307, 310.)

"Proof of failure to keep a promise may tend to establish the intent not to keep it, but common experience teaches us that such proof is not conclusive; that the making of an unkept promise does not imply of necessity in all cases a present intention not to keep the promise". (*Adams* v. *Clark*, 239 N. Y. 403, 410.) The evidence is consistent with the defendant's having done everything possible to keep his promise, in view of his army service and his rung in the economic ladder thereafter.

True, we have the uncorroborated testimony of plaintiff that, more than six years after the marriage, defendant stated he never intended to furnish a home.

However, section 1143 of the Civil Practice Act provides: "In an action brought to annul a marriage, a final judgment annulling the marriage shall not be rendered by default for want of an appearance or pleading, or upon the trial of an issue, without proof of the facts upon which the allegation of nullity is founded. The declaration or confession of either party to the marriage is not alone sufficient as proof, but other satisfactory evidence of the facts must be produced."

Here at most, we have only the declaration of plaintiff of the alleged expression of intention and only her statement that defendant confessed that his statement of intention was fraudulent. There is no other satisfactory evidence of the expression of intention or of its falsity.

Plaintiff seeks no alimony or support for the child. That position would seem to reflect a strangely charitable attitude towards one who has induced a person to marry him, through fraudulent representation.

While the Court of Appeals has held that fraud which is sufficient to vitiate any civil contract is sufficient, also, to vitiate a marriage contract (*di Lorenzo* v. *di Lorenzo*, 174 N. Y. 467), that court also recognized that the marriage contract "does differ from ordinary common-law contracts, by reason of its subject matter and of the supervision *which the state exercises over the marriage relation*, which the contract institutes. In such respect, it is *sui generis*. While the marriage relation, *in its legal aspect*, has no peculiar sanctity, *as a social institution, a due regard for its consequences and for the orderly constitution of society has caused it to be regulated by laws, in its con-*

*duct as in its dissolution* ". (*di Lorenzo* v. *di Lorenzo, supra,* p. 472. Italics supplied.)

The Legislature, too, has recognized the distinction between an ordinary civil contract, involving money or property rights and a marriage contract, involving a social status. It is for that reason that section 1143 of the Civil Practice Act was enacted. There is no similar statutory regulation with respect to an action to annul an ordinary civil contract for fraud.

The application for a decree of annulment must be denied and the complaint is dismissed upon the merits, without costs.

Submit decision and judgment accordingly.