J. Irwin Shapiro, J.
In this action the husband sues for an annulment and the wife counterclaims for a separation.
The parties were married on October 25, 1956. He was then 40 years of age, and it was his first marriage. She was asked her age at the trial but declined to give it for “ business reasons ”, and she was not pressed on the point. This was her third matrimonial venture, she having been previously married to one Clayton V. McGregor and to one Doctor Joseph S. Hory.
In a separation suit instituted in the Supreme Court, New York County, by defendant against her husband- — -the plaintiff here — her complaint was dismissed on the merits after trial.
The basis of the husband’s suit for an annulment here is that the defendant represented to him that her two prior marriages *208 had ended by the death of her respective spouses, whereas in truth and in fact each of them was terminated by a divorce decree; that he relied upon those representations and believed them to be true, and that if he had known that she was a divorcee, he would not have married her, and that he only discovered her fraud and misrepresentations on February 28, 1959, when she testified at the trial of her separation suit.
It is undisputed that the defendant’s marriage to McGregor ended by a judgment of divorce obtained by him against her, and that her marriage to Doctor Hory ended with a Nevada decree of divorce obtained by her.
In her “ affidavit for a license to marry” the plaintiff, sworn to by defendant on October 22, 1956, the date of her marriage, she answered the pertinent questions as follows:
“ How many times have you been married. (2) Twice. Full names of husbands. (1. Dr. Joseph Hory during former marriages. (2. C. V. McGregor Are they living or dead. Both dead (1) 1937 (2) 1953. Are you a divorced person. Both no.”
The statement that her last husband died in 1953 was untrue, he having died in 1956, the very year of defendant’s marriage to plaintiff. The statement made by defendant that she was not “ a divorced person ” in the case of either of her two prior marriages, was also untrue. Her explanation for these misstatements cannot be accepted. When asked why she stated that her last husband had died in 1953, when in fact he had died the very year she filled out the questions and answers, she said she could not remember the year of his death and that the plaintiff told her it was only a technicality anyway. This explanation may not be credited. Doctor Hory was a well-known ophthalmologist; his death was announced on the radio, and defendant admitted that that was how she learned of it. Her explanation that she did not remember in what year he died is incredible.
The court is compelled to find as a fact that the misstatement with respect to the year of Doctor Hory’s death was merely a necessary continuation of the deception which defendant had practiced on plaintiff when she told him that she had been happily married with Doctor Hory until his death about four years before her marriage to the plaintiff.
At the separation trial in New York County the defendant was shown her application for a license to marry, and asked if the handwriting was hers. After- first saying, “ Mine, I *209 guess”, she then said “Mine.” When the Official Referee asked, “It’s all in your handwriting? ” she said “ Well, I think so.” When he said “ Well, look at it” and handed her the exhibit, she said “Yes, sir.” She then handed the exhibit back to the Referee.
Later on in her examination upon that trial, she denied that the words “ Both no ” in answer to the divorce question were in her handwriting, saying “ I don’t think I wrote the 1 Both no’ there. That doesn’t look like my handwriting” and she finally wound up by saying that she left the answer to the question “ Are you a divorced person? ” blank.
Upon the trial before me defendant directly contradicted the testimony she gave before the Official Referee, and stated that the handwritten answer ‘ ‘ Both no ” to the question ‘1 Are you a divorced person? ” was neither written by her nor left blank, and that it was written by the plaintiff. This and the many other contradictions, equivocations and evasions in her testimony render the defendant unworthy of belief.
I am convinced, and I so find as a fact (1) that the defendant represented that her prior marriages had been terminated by the death of each of her previous husbands; (2) that she concealed the fact that both of these marriages had terminated by divorce proceedings, in one of which she was found to be the offending party; (3) that plaintiff would not have married the defendant if he had known that both of those marriages had terminated by divorce, and more particularly that in one of them a decree of divorce was rendered against her; (4) that the misrepresentations by the defendant were material and that they were only discovered by plaintiff at the time that the defendant testified at the trial of the separation action, and (5) that the plaintiff has not cohabited with the defendant since the discovery by him of the defendant’s chicanery. (Civ. Prac. Act, § 1139.)
Under such circumstances, if there is in the record “ other satisfactory evidence of the facts” aside from plaintiff’s and defendant’s “declaration or confession” (Civ. Prac. Act, § 1143, subd. 2), plaintiff is entitled to an annulment. (Blank v. Blank, 107 N. Y. 91.)
In that case the action “ was brought to set aside a judgment annulling a marriage contract between the parties and declaring void an antenuptial contract also made between them. The action in which the judgment referred to was made was brought by the defendant herein upon the ground that the plaintiff had represented herself to be a widow, whereas she was divorced ”. (Statement of case, 107 N. Y. 92.)
*210 In holding that the representation that she was a widow, when in fact she was a divorcee, was sufficient ground for an annulment, the court there said (p. 96): “ the fraud by which she was charged with having induced the defendant to enter into the contract, was sufficient to justify the court in setting it [the marriage] aside ”.
In Fisk v. Fisk (6 App. Div. 432, 435 [1896]), the court attempted to distinguish the Blank case (supra) saying: “ The case of Blank v. Blank (107 N. Y. 91) has no application here. It appears that the defendant in that case, who was the wife, represented herself to be a widow, whereas she had been divorced and her former husband was living, and the decree of divorce was not a valid one, so that, in fact, she was not competent to enter into the marriage contract.”
I cannot follow the reasoning of that attempted distinction for the court in the Blank case (supra, p. 96) made it very clear that it was not passing on the question of “ whether the marriage between the defendant and the plaintiff was legal or illegal, as matter of law,” but that it was basing its decision entirely on the fact that ‘ ‘ the fraud by which she was charged with having induced the defendant to enter into the [marriage] contract, was sufficient to justify the court in setting it aside ” and that fraud was that “the plaintiff had represented herself to be a widow, whereas she was divorced ”. (107 N. Y. 92, supra.)
In any event, the Fisk case (supra) is not in point for there the plaintiff did “ not complain that any false representations were made to him on the subject ” (p. 433) of defendant’s premarital status — he simply did not inquire and she did not tell him. In our case, we have an affirmative misrepresentation .on the subject. Under such circumstances, and assuming the validity of Fisk as an authoritative statement of the present state of the law, plaintiff is nevertheless entitled to an annulment for ‘ ‘ Any fraud is adequate which is 1 material, to that degree that, had it not been practiced, the party deceived would not have consented to the marriage ’ (di Lorenzo v. di Lorenzo, supra [174 N. Y. 467], p. 471), and is ‘ of such a nature as to deceive an ordinarily prudent person.’ (Id. p. 474.) ” (Shonfeld v. Shonfeld, 260 N. Y. 477, 479-480; Beard v. Beard, 238 N. Y. 599; Domschke v. Domschke, 138 App. Div. 454.)
The plaintiff in this case has made proof of “ other satisfactory evidence of the facts ” as required by subdivision 2 of section 1143 of the Civil Practice Act, through the testimony of his sister, whose testimony I credit and believe, through the documents in evidence and by some of the admissions made by the defendant on the witness stand.
*211 Such admissions on the witness stand do not come within the prohibition of subdivision 2 of section 1143 of the Civil Practice Act, which says that “ In any action, whether or not contested, brought to annul a marriage the declaration or confession of either party to the marriage is not alone sufficient as proof, but other satisfactory evidence of the facts must be produced.” As the court said in Newitt v. Newitt (282 App. Div. 81, 84): “ Direct proof by a party sworn as a witness of a material fact in an action for annulment is something different from, and more than, a * declaration or confession ’ in the sense that those terms are used in section 1143 of the Civil Practice Act. The rule of this section of the Civil Practice Act is based on the possibility that the 1 confession ’ is not a true admission against interest but it apt to be collusive. Corroboration is thus required. The reason and rule do not apply to direct testimony of a party on trial of an action.”
Judgment is, accordingly, rendered for plaintiff, granting him an annulment. It follows as a necessary consequence that defendant’s counterclaim for a separation is dismissed on the merits.
The above constitutes the decision of the court in accordance with the requirements of section 440 of the Civil Practice Act.
Findings of fact and conclusions of law are, therefore, unnecessary. Proceed accordingly on notice.