DANIEL H. OLMSTED, Appellant, *v.* ELLEN A. OLMSTED et al., Appellants, and JOHN H. OLMSTED et al., Respondents.

1. DOMESTIC RELATIONS — WHEN ILLEGITIMATE CHILDREN LEGITIMATIZED BY THE SUBSEQUENT MARRIAGE OF THEIR PARENTS. Where the laws of a foreign state or country provide that an illegitimate child is made legitimate by the subsequent marriage of the parents within its jurisdiction, such legitimacy is recognized in this state and the child is entitled to all of the rights flowing from that status, including the right to inherit, notwithstanding the fact that it was born in another country, but such is the rule only where the marriage between the parents can be lawfully made and not where it would be polygamous, incestuous or is prohibited by law.

2. SAME — FOREIGN DIVORCE — WHEN INVALID IN THIS STATE — SUBSEQUENT MARRIAGE OF PARTY THERETO TO MOTHER OF HIS ILLEGITIMATE CHILDREN WILL NOT RENDER THEM LEGITIMATE — LAWFUL ISSUE. Where, therefore, a resident of this state, who had married and had chil-

dren herein, deserted his wife and children, and going to another state performed a marriage ceremony with another woman, by whom he had children, and thereafter removed to still another state where the laws provide that illegitimate children are legitimatized by their parents' subsequent marriage, and there entered suit for divorce against his first wife upon grounds not recognized by the laws of this state, process wherein was served upon the first wife, who still resided in this state, by publication only and not personally, and, she not appearing, judgment of divorce was entered by default; a subsequent marriage ceremony, in the state where the divorce was obtained, with the mother of his illegitimate children will be considered in this state as polygamous and will not legitimatize such children so as to entitle them to share in property left to the lawful issue of their father, inasmuch as the divorce cannot be recognized by the courts of this state as valid, since the court by which it was granted never obtained jurisdiction of the person of the first wife and in the absence of jurisdiction a judgment or decree has no force or effect. A contention that, although the decree of divorce may be invalid in this state, still the illegitimate children became legitimate under that decree and, therefore, our courts are bound to recognize them as legitimate, cannot be sustained, since, if the divorce was void, a legal obstacle existed to the father's subsequent marriage in his having another wife living from whom he had no valid divorce, and it is only where there is no legal obstacle to the subsequent marriage that illegitimate children are legitimatized thereby.

*Olmsted* v. *Olmsted,* 118 App. Div. 69, reversed.

(Argued December 6, 1907; decided January 7, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 1, 1907, which modified and affirmed as modified a judgment of Special Term in an action of partition.

The facts, so far as material, are stated in the opinion.

*Charles H. Luscomb* for appellant. The attempted marriages both in New Jersey and in Michigan by the said Benjamin F. Olmsted with Sara Louise Welchman were, and each of them are, void in the state of New York, and as to any property therein, and the issue of these attempted marriages, the defendants John H. and William H. Olmsted, were not and are not lawful issue of Benjamin F. Olmsted in the state of New York as to any property therein. (*North* v. *North,*

47 Misc. Rep. 181; *Winston* v. *Winston,* 165 N. Y. 555; *Lynde* v. *Lynde,* 162 N. Y. 405; *Atherton* v. *Atherton,* 155 N. Y. 129; *O'Dea* v. *O'Dea,* 101 N. Y. 23; *Matter of Kimball,* 155 N. Y. 68; *Haddock* v. *Haddock,* 201 U. S. 562.) Both the divorce and the marriage in Michigan being void in the state of New York, the statute passed by the state of Michigan, May 29, 1881, providing that the child should be considered legitimate, his parents marrying after his birth, can have no more effect and be no more valid than the marriage upon which legitimacy is based. (*Shaw* v. *Gould,* L. R. [3 Eng. & Ir. App.] 71.) A vested interest in lawful issue in real estate in this state, under the laws of New York, created by a will made by a resident of this state and probated here, cannot be divested, to the injury of the lawful issue, for the benefit of issue of a marriage, made legitimate in Michigan by a statute of that state, following a divorce in Michigan and a subsequent marriage there, both void in the state of New York. (*Shaw* v. *Gould,* L. R. [3 Eng. & Ir. App.] 71.)

*Read L. Dilworth* for defendants, appellants. The marriage ceremony performed in Michigan will not be recognized as valid in this state. At the time Mary Jane Olmsted was alive, having resided continuously in the state of New York, the matrimonial domicile of Benjamin F. Olmsted, and she was still his lawful wife, the Michigan court never having obtained jurisdiction over her to render the decree in the Michigan divorce suit. The decree of the Michigan court has no extra-territorial effect and, therefore, is a nullity in this state. (*Winston* v. *Winston,* 165 N. Y. 555; *Lynde* v. *Lynde,* 162 N. Y. 405; *O'Dea* v. *O'Dea,* 101 N. Y. 23; *People* v. *Parker,* 76 N. Y. 78; *Haddock* v. *Haddock,* 201 U. S. 562; *Atherton* v. *Atherton,* 155 N. Y. 129; 181 U. S. 155; *Matter of Kimball,* 155 N. Y. 68.) The attempted marriage of Benjamin F. Olmsted with Sara Louise Welchman performed in the state of Michigan, being void under the laws of this state, could not have the effect of legitimatizing

children concededly illegitimate, so as to divest the legitimate children of property vested in them as the lawful issue of their parents prior to the birth of such illegitimate children. (*Miller* v. *Miller*, 91 N. Y. 315; *Matter of Hall*, 61 App. Div. 266; *Shaw* v. *Gould*, L. R. [3 Eng. & Ir. App.] 71.) A vested interest in real property in this state created by will of a resident of this state in favor of lawful issue cannot be divested in favor of illegitimate issue, attempted to be legitimatized under a statute of Michigan by a subsequent marriage declared void in this state. (*Shaw* v. *Gould*, L. R. [3 Eng. & Ir. App.] 71.)

*Mortimer W. Byers* for respondents. The marriage ceremony performed in Detroit on August 22, 1882, rendered the defendants John H. and William H. Olmsted legitimate children and "lawful issue" of Benjamin in Michigan. (2 Howell's General Statutes of the State of Michigan, p. 1505, § 5775a.) The status of legitimacy having been created in Michigan on August 22, 1882, followed the defendants John H. and William H. Olmsted when they removed therefrom, and attaches to them for all purposes in New York to-day. (*Miller* v. *Miller*, 91 N. Y. 315; *Van Voorhees* v. *Brintnall*, 86 N. Y. 18; 22 Am. & Eng. Ency. of Law [2d ed.], 1360; Story on Conflict of Laws [8th ed.], § 93; *Bates* v. *Virolet*, 33 App. Div. 436; *Olmsted* v. *Olmsted*, 118 App. Div. 69; *Miller* v. *Miller*, 18 Hun, 507; Code Civ. Pro. § 1745; *Jones* v. *Jones*, 108 N. Y. 415; *Rich* v. *Rich*, 88 Hun, 566; *Haddock* v. *Haddock*, 201 U. S. 562; *Cheever* v. *Wilson*, 9 Wall. 108.) The action brought by the first wife of Benjamin Olmsted in New York, final judgment in which appears to have been entered in 1885, has no effect upon the present controversy. (*Pennoyer* v. *Neff*, 95 U. S. 714; *Matter of Hall*, 61 App. Div. 266; *Townsend* v. *Van Buskirk*, 22 App. Div. 441.)

HAIGHT, J. This action was brought to obtain a partition or sale of real estate claimed by the appellants as tenants in

common, and for a determination of the rights of the parties to share in the proceeds of any sale that should be made thereof.

It appears, in substance, from the findings made by the trial court, that the real estate in question was formerly owned by one Silas Olmsted, late of Tarrytown, N. Y., who died in 1874, leaving a last will and testament with codicils attached which were admitted to probate, by which he devised the use of the property to his sons, William F. and Benjamin Franklin, during their natural lives, and upon their death the remainder was to vest in the " *lawful issue* of each of my said sons, such issue to take share and share alike ; the children of any deceased child of either of my said sons to take the share their parent would have taken if living." Benjamin F. Olmsted, one of the sons of the decedent to whom a life interest in the real estate in question had been given by the testator, was married to Mary J. Olmsted in the state of New York on the 25th day of December, 1850, by whom he had four children, to wit, the plaintiff, Daniel H. Olmsted, and the defendants Mary O. Decker, Clarence E. Olmsted and Frank S. Olmsted. Benjamin F. and his wife Mary were residents of the state of New York at the time of their marriage and at the time their children were born and Mary continued to be a resident of this state until her death, on the 22d day of January, 1902.

It further appears from the finding that on the 28th day of February, 1874, Benjamin F. Olmsted joined in a marriage ceremony with one Sarah Louise Welchman in the state of New Jersey, by whom he had two children who were the defendants John E. Olmsted and William H. Olmsted; and that thereafter during the summer of 1880 they removed to the state of Michigan, and on the 10th day of February, 1882, in the Circuit Court of Wayne county, Michigan, on the application of Benjamin F. Olmsted, reciting that he then was and had been for more than a year a resident of the state of Michigan, procured a subpœna to be issued, directing Mary Jane Olmsted, his former wife, to appear and defend

an action brought by him for divorce under the law of the state of Michigan, on account of extreme cruelty and desertion; that the subpœna was never personally served upon Mary J. Olmsted, and on proof that she was not a resident of the state of Michigan, but was a resident of the state of New York, service thereof was ordered to be made by publication in a Detroit paper. After the period of publication prescribed by the order had expired, the said Mary Jane Olmsted not having appeared or answered, judgment was entered in favor of said Benjamin F. Olmsted for a dissolution of the marriage, and thereafter, on the 22d day of August, 1882, in the city of Detroit, Michigan, Benjamin F. Olmsted again joined in a marriage ceremony with the said Sarah Louise Welchman, and lived with her until the time of her death, January 30th, 1900; that in June, 1883, Mary Jane Olmsted commenced an action in the Supreme Court in the state of New York against Benjamin F. Olmsted and others, setting forth in her complaint that in June, 1870, Benjamin F. Olmsted deserted and abandoned her and her children at Newburgh, N. Y., and took up his abode in New Jersey, and demanded a decree of separation against him and asking for alimony and counsel fee, and the application of the property of the said Benjamin F. Olmsted for the purpose of furnishing the money required therefor; that in that action the judgment roll shows that Benjamin F. Olmsted was represented by an attorney on a motion for the sequestration of his property to pay the alimony, etc., decreed in the judgment; and that on the 22d day of January, 1885, judgment was entered in that action for the plaintiff Mary Jane Olmsted and against the defendant Benjamin F. Olmsted, separating Mary Jane from him and requiring the payment by him of alimony and counsel fees; that thereafter an appeal was taken from the judgment so entered to the General Term of the Supreme Court, in which the judgment was affirmed. Benjamin F. Olmsted died July 16th, 1905, and thereupon his lawful issue became entitled to the real estate as remaindermen.

The trial court found as conclusions of law that the lawful

issue of Benjamin F. Olmsted were the plaintiff, Daniel H. Olmsted, and the defendants Mary O. Decker, Clarence E. Olmsted and Frank S. Olmsted; that the defendants John H. Olmsted and William H. Olmsted, the children of Benjamin F. Olmsted and Sarah Louise Welchman, were not the lawful issue of Benjamin F. Olmsted, and were not entitled to any share in the said property. The Appellate Division has modified the judgment, holding that the defendants John H. Olmsted and William H. Olmsted are the lawful issue of Benjamin F. Olmsted, and are entitled to share in the said property.

Under the common law, the legitimacy or illegitimacy of a person was determined by the law of the country in which he was born. If by the law of that country he was legitimate, he should be deemed legitimate everywhere. If, however, by that law he was illegitimate, then he should be deemed illegitimate in every other country. There were some exceptions; for instance, if the parents were citizens or representatives of some foreign country, passing through or temporarily staying in the country of the birth. But these exceptions do not arise in the case under consideration and are not necessary to be now considered. In some of the countries of Europe there were laws under which illegitimate children became legitimate by the subsequent marriage of their parents. This was the case in France, and its courts consequently held that a child born out of wedlock in its country became legitimate by a subsequent marriage of its parents, although the marriage took place in England where a different law prevailed, and where a subsequent marriage would not have the effect of rendering the child legitimate. (See Story on Conflict of Laws [Redfield edition], secs. 93, 93s, and other authorities cited.)

In this state the law is now settled in accordance with the French rule, that when an illegitimate child has by the subsequent marriage of his parents become legitimate by virtue of the laws of the state or country where such marriage took place and the parents were domiciled, he is thereafter legiti-

mate everywhere and is entitled to all of the rights flowing
from that status, including the right to inherit, notwithstand-
ing the fact that he was born in another country. (*Miller* v.
*Miller*, 91 N. Y. 315.)

Recently many of our sister states have adopted statutes
similar to those of France, providing that the subsequent mar-
riage of the parents legitimatized the child or children previ-
ously born. Such a statute was adopted in Michigan in 1881,
and in this state in 1895. These statutes, however, were
passed long after the death of Silas Olmsted and the admit-
ting of his will to probate, under which his legitimate grand-
children became vested as remaindermen in the estate left by
him, subject to the life use by their father. But the statutes
to which we refer, both in this state and in Michigan, only
relate to such marriages between parents as may be lawfully
made, and not to those which are polygamous, incestuous, or
are prohibited by law. (See Story on Conflict of Laws, secs.
113a and 114.)

In the case of *Adams* v. *Adams* (154 Mass. 290) a testator
in Massachusetts bequeathed property to the wife of his
brother, "for the benefit of herself and all the children of
such brother." Thereafter the brother went to California and
obtained a divorce from his wife without living there the
requisite time, or of giving her notice. He then married
another woman, by whom he had previously had an illegiti-
mate son. Under the Code of California, children begotten
before marriage were legitimatized by subsequent marriage of
the parents. The illegitimate son, claiming to be legitima-
tized by the Code of California, brought an action in equity
to establish his share in the fund left by the testator for the
benefit of the wife and all the children of the testator's
brother. The action was dismissed, the court holding that the
validity of the divorce might be inquired into, notwithstand-
ing the recitals in the record; that the marriage was void and
did not legitimatize the plaintiff, and consequently he was not
entitled to take under the will. That case, in many respects,
is similar to this case. As we have seen, Benjamin F. Olm-

30

sted was a resident of this state, married here, and had four children. He then left his family and went to New Jersey, where he lived with another woman, by whom he had two sons. These children were concededly illegitimate. He then removed to Michigan, brought an action against his wife for divorce, who was still living in the state of New York, and procured a decree in that court annulling the marriage upon the ground that his wife had deserted him, without personal service upon her of process or other notice of the commencement of the action. He then married the mother of his two illegitimate children.

While the courts of this state are required to give full faith and credit to the decrees of the courts of our sister states, we have the right to inquire as to whether such courts had obtained jurisdiction of the person and the subject-matter; and if we find that they had not obtained jurisdiction, then their judgment or decrees become of no force or effect. (*Matter of Kimball,* 155 N. Y. 68; *Winston* v. *Winston,* 165 N. Y. 555; *Haddock* v. *Haddock,* 201 U. S. 562; *Atherton* v. *Atherton,* 155 N. Y. 129, 181 U. S. 155.) The Michigan courts never obtained jurisdiction of Benjamin F. Olmsted's wife, a resident of this state. She had no notice, and consequently did not appear in the action. The ground upon which the divorce was sought was one not recognized by the laws of this state as a ground for divorce. It was a decree such as the courts of this state have repeatedly refused to recognize as valid and binding. Not only have our courts refused to recognize such decrees as valid, but with reference to this particular decree an action had been brought in this state by Mrs. Olmsted for separate support and maintenance, and for the sequestration of the property of her husband for that purpose; and although he appeared by counsel, the court has adjudged her entitled to such sequestration and support, and upon the ground that he had deserted her and her family. Thus we have an adjudication in our own courts, establishing the fact that Mrs. Olmsted was still his wife, notwithstanding the Michigan decree. It is, however, urged that

although the Michigan decree may be invalid and of no force or effect, still the illegitimate children became legitimate under that decree, and, therefore, our courts are bound to recognize them as legitimate. We cannot approve of the soundness of such a contention. As we have already stated, the statute was designed only for such persons as were free from legal obstacles preventing their marriage, and it consequently follows that if the divorce was void, then legal obstacles did exist to the marriage of these persons; for Olmsted had another wife living from whom he had no valid divorce, and his marriage under such circumstances was polygamous; and had the ceremony been performed in this state it would have been bigamous and punishable criminally.

Should we sanction the doctrine contended for, then the legislature in any state could, in effect, nullify our own statutes and deprive our own citizens of property, which under our laws they had become lawfully vested with and entitled to receive. Not only this, but the statute of Michigan, passed in 1881, could change the provisions of a will executed here and probated in 1874, bringing in persons as remaindermen who, under the provisions of the will, were not remaindermen, nor entitled to share in the estate. We think this should not be permitted.

The judgment of the Appellate Division should be reversed, and that of the trial court affirmed, with costs in both courts.

CULLEN, Ch. J., O'BRIEN, EDWARD T. BARTLETT, VANN, HISCOCK and CHASE, JJ., concur.

Judgment accordingly.