## In the Matter of the Estate of JANE MONCRIEF, Deceased.

Surrogate's Court, New York County, February, 1922.

**Parent and child — child born before marriage of parents — annulment of marriage — child held to be legitimate under chapter 531, Laws of 1895.**

**Wills — ineffectual disposition of remainder of estate — intestacy — distribution.**

A testatrix who gave the remainder of her estate to the grandnieces or grand-nephews who survived her two nieces and nephews, died leaving her surviving a nephew, a niece and a daughter of a deceased niece. Said grandniece predeceased the survivor of the nephew and the niece. *Held*, that testatrix died intestate as to the entire remainder which became vested in her heirs at law and next of kin.

Upon the question as to whether said grandniece was one of the heirs at law and next of kin of testatrix who died in 1897, the legitimacy of the grandniece was the real issue. It appeared that she was born on February 5, 1882, the day before her parents were married; that on June 23, 1883, said marriage was annulled for duress by a decree which provided that the marriage " is wholly null and void from the date of this judgment." *Held*, that by the statute (Laws of 1895, chap. 531) the grandniece was legitimatized.

The ceremonial marriage of her parents, though in the nature of a voidable one, and the provision of the decree which did not annul the marriage *ab initio*, were a sufficient answer to the contention that there never was a marriage within the meaning of the statute.

The infant son of the grandniece takes from his mother and not through his mother, as her interest had vested, she having survived the testatrix.

PROCEEDINGS upon the judicial settlement of the accounts of an executor of a deceased executrix, and of an administrator c. t. a.

*Emmet, Marvin & Roosevelt*, for trustee under the will of Alice L. Gilbert.

*John H. Taylor* (*Harry W. Mack*, of counsel), special guardian for Vallimer Gilbert, an infant.

*Charles A. Runk*, administrator *c. t. a.*, in person.

*Rufus T. Griggs*, for executor of Alice L. Gilbert.

*Percy L. Housel*, for Anna Ostrander, sole devisee and legatee and as executrix under the will of James Moncrief More.

COHALAN, S. I shall refer in this memorandum only to such facts as are essential to a consideration of the issue of egitimacy. It is unnecessary to mention any name other than that of the decedent.

Under paragraph 5 of the will the remainder was given to the grandnieces or grandnephews of the decedent, who survived her two nieces and nephews. There was only one grandniece and she predeceased the survivor of the niece and nephew. The situation that arose upon the death of the survivor of the nieces and nephews

was not provided for in the will. Therefore, the testatrix died intestate as to the entire remainder. It vested in those who were the heirs at law and next of kin of the testatrix at the time of her death. *Clark* v. *Cammann,* 160 N. Y. 315; *Grinnell* v. *Howland,* 51 Misc. Rep. 132. She left a nephew and a niece and a daughter of a deceased niece. The question is whether this grandniece of the testatrix was one of the heirs at law and next of kin. Her legitimacy is the real issue.

She was born out of wedlock February 5, 1882. The next day, February 6, 1882, her parents were married. This marriage was annulled for duress by the New York Supreme Court, June 23, 1883. The annulment decree provided that the marriage " is wholly null and void *from the date of this judgment    *    *    *.*" Chapter 531, Laws of 1895, provided that "All illegitimate children whose parents have heretofore intermarried, or shall hereafter intermarry, shall thereby become legitimatized and shall be considered legitimate for all purposes." The testatrix died in 1897 when this statute was in effect. The act was retroactive in its operation. It did not disturb any vested rights under the will because none existed until the death of the testatrix in 1897 subsequent to its enactment. It is contended that the annulment of the marriage operated to prevent the child from being legitimatized under the express language of the statute.

I am of the opinion that the illegitimate was legitimatized by this legislation. The statute expressly applies where the parents " have heretofore intermarried." To warrant a holding that a prior marriage was no marriage at all I am inclined to think such prior marriage must have been polygamous, incestuous or of some similar character prohibited by law. This was the view taken by the Court of Appeals in *Olmsted* v. *Olmsted,* 190 N. Y. 458, 467, where under facts different from those herein the court referred to this statute as follows: "As we have already stated, the statute was designed only for such persons as were free from legal obstacles preventing their marriage    *    *    *." In that case, a prior lawful marriage was the legal obstacle and the children were held illegitimate. The controlling reason for the reversal of the very able and humane decision of the majority of the Appellate Division (118 App. Div. 69) was that remainders already vested would be divested. No such situation arises here.

The parties to this marriage were capable of contracting and the marriage was not in violation of any law. If the annulment proceeding had not been brought, the marriage would have continued valid and binding. The decree of annulment did not annul the marriage *ab initio.* The evident acquiescence of the parties as

indicated by the terms of 'the decree shows that the marriage was deemed valid from February 6, 1882, the date of the ceremony, to June 23, 1883, the date of the decree. What is called the presumption of legitimacy is said to be one of the strongest known to the law. The courts have frequently applied it. *Matter of Biersack*, 96 Misc. Rep. 161, and cases therein cited. This rule requires the court to resolve every close question of evidence in favor of legitimacy. By analogy, it should prevent a finding of illegitimacy based on fine-spun reasoning, and highly technical distinctions in apparent avoidance of the plain words of a statute.

The ceremonial marriage and the provisions of the decree of annulment ought to be sufficient answer to the contention that there never was a marriage within the intent of the statute. The statute was enacted for a humane purpose. Its intent was benign and beneficent. It should be construed in like spirit. Because of the circumstances above referred to I think the marriage was in the nature of a voidable one. A clear statement of the difference between a void and a voidable marriage is found in the opinion of Mr. Justice Greenbaum in *Houle* v. *Houle*, 100 Misc. Rep. 28, a case that is distinguishable, but helpful, because it involved an application of the statute in question.

In holding that this daughter of the niece of the testatrix was legitimate, I find that she was entitled to the share of the remainder to which her mother would have been entit'ed had she survived the testatrix. Therefore, the infant represented by the special guardian does not take through his mother. He takes from his mother, who survived the testatrix and whose interest had vested in her lifetime. This vital fact should be kept clearly in mind in reading opinions in cases like *Matter of Lauer*, 76 Misc. Rep. 117, where the illegitimate claimed the right to inherit from a decedent through the illegitimate's mother.

Tax costs and settle decree on notice directing distribution in accordance with the above memorandum.

Decreed accordingly.