BLANCHE YELIN, Plaintiff, *v.* BERNARD YELIN, Defendant.

Supreme Court, Kings County, November 15, 1929.

*Bernard Kronthal,* for the plaintiff

*Charles Fay,* for the defendant.

DIKE, J. Shall a physical examination of a party defendant be allowed in this action for the annulment of a marriage? It is quite true, as contended by the defense, that there is no provision in the Civil Practice Act authorizing a physical examination such as is sought here, and the counsel for the plaintiff concurs in this statement but appeals to the inherent equity powers of this court for the relief that he seeks. It must be kept in mind that I am not deciding the vital question of the complaint as to its sufficiency to justify an annulment for this cause. In harmony with the clear tendency of the times to clarify issues, to shorten and simplify methods of procedure when possible, and in general to acquiesce in any application calculated to arrive in the shortest way at the truth, where no clear rights are jeopardized, I have concluded that this application in effect should be granted, perhaps not exactly as desired by the plaintiff but as indicated below.

The action is for an annulment on the ground that the defendant fraudulently concealed from the plaintiff the fact that he was afflicted with tuberculosis, represented that he was in good health, and thereby induced the plaintiff to enter into the marriage relationship. Counsel for the defendant states that he has been unable to find any case yet holding that this disease is a ground for annulment. Happily, I am able to supply the deficiency complained of, in the case of *Sobol* v. *Sobol* (88 Misc. 277), where in a characteristically well-balanced opinion by BLANCHARD, J., he says (at p. 279): " It is for the court, in the exercise of sound

discretion and with regard to public policy because of the peculiar nature of the contract, to determine whether or not the misrepresentations of fact and the probable consequences to be expected because of these misrepresentations are of sufficient importance to cause the court to exercise its power to dissolve the contract in the interest of the parties and that of the public at large," and continuing (at p. 280): " In the case at bar the disease from which it is claimed the defendant suffered is not a disease which so closely affects the marriage relation * * * grave and disastrous results from infection may be caused to the other party and possible evil consequences to the offspring of such a union, I think it of sufficiently grave character to bring it within the purview of the rule applicable to venereal disease," and concluding (on p. 282): " It would seem to me a gross perversion of justice to refuse to release a party from a matrimonial contract whereby no important status affecting the relationship of the parties to the general public or to each other has been established in the face of a situation which, as between the parties and the probable normal result of their continuing union, is attended with an element of such grave potential results," and judgment was granted annulling the marriage in this case.   In the case of *Lapides* v. *Lapides* (224 App. Div. 257) the affliction complained of was epilepsy, and KAPPER, J., in a careful opinion reviewing many cases said (on p. 259): " Whether epilepsy is transmissible to offspring may be a subject of proof, but whether proven or not the complaint suffices to show defendant is suffering from a malady rendering cohabitation dangerous to both parties, such condition being known to the defendant but willfully concealed by her from the plaintiff," and the learned justice held, " There is no valid reason for excepting the marriage contract from the general rule," quoting *di Lorenzo* v. *di Lorenzo* (174 N. Y. 467).

The Court of Appeals has recognized the rule obtaining in chancery which permits an examination in annulment actions where the necessities of the situation so require, and it was said: " It rests upon the interest which the public, as well as the parties, have in the question of upholding or dissolving the marriage state, and upon the necessity of such evidence to enable the court to exercise its jurisdiction." (*McQuigan* v. *D., L. & W. R. R. Co.*, 129 N. Y. 50, at p. 54.)   This doctrine upholding the inherent power of the court in this respect has been recognized many times. (*Devanbagh* v. *Devanbagh*, 5 Paige Ch. 554; *Cowen* v. *Cowen*, 125 Misc. 755, and other cases.)   In *Devanbagh* v. *Devanbagh* (*supra*, at p. 557) the chancellor said: " And I have no doubt as to the power of this court to compel the parties, in such a suit, to submit

to a surgical examination, whenever it is necessary to ascertain facts which are essential to the proper decision of the cause."

The peculiar question here is the right of the plaintiff to the medical examination which has to do with the defendant's condition. That does not necessarily have to be an examination if the defendant is willing to waive his statutory privilege as to the testimony of the physicians who already examined him. This method of procedure is upheld in the case of *Geis* v. *Geis* (116 App. Div. 362). If this right is waived by the defendant he avoids the necessity of the examination, which I feel is plaintiff's right. As to the time when the examination should be made, this seems to be covered in the cases of *Gore* v. *Gore* (103 App. Div. 168) and *Cowen* v. *Cowen* (125 Misc. 755). The motion is, therefore, granted unless the defendant concurs in the above rule and waives the statutory privilege regarding the testimony of the physicians who have already examined him. Submit order herein on notice.