Van Voorhis, J.
This is an annulment suit. The question is one of pleading. The appeal presents solely whether the second cause of action in the wife’s amended complaint is sufficient in law. Special Term denied the defendant husband’s motion to dismiss for insufficiency, -stating: “Whether the issue herein refers to matters vital to the marriage relationship must be determined at the trial.” The Appellate Division reversed, holding that the fraud alleged in the second cause of action was not vital to the marriage relationship. An earlier complaint had been dismissed at Special Term, with leave to plead over, in an opinion by Loreto, J., the reasoning of which would sustain the sufficiency of thi-s cause of action in the amended complaint which is now before us.
*193 The material portions of this canse of action allege that the parties were married at New York City on June 28, 1963 (this annulment action was begun April 22, 1964) and that at and before the marriage the defendant husband falsely and fraudulently concealed from the plaintiff that he had been an officer in the Germany Army and a member of the Nazi party during World War II, and “ was fanatically anti-Semitic; that he believed in, advocated, approved and even applauded Hitler’s ‘ Final Solution ’ of the Jewish question, namely the extermination of the Jewish people; and that he would require plaintiff to £ weed out ’ all of her Jewish friends and to cease socializing with them.” The next paragraph alleges that plaintiff married defendant believing him to be without fanatic anti-Semitism and without the belief that the Jewish people should be exterminated, “ all of which he had at the date thereof, and during the marriage and all of which he expressed after and during the marriage so as to make the marital relationship unworkable.” The next paragraph further alleges: “ That plaintiff relied on defendant’s apparent normal character, high moral beliefs and absence of fanatic anti-Semitism and would not have married him had she known prior to the aforementioned marriage that the defendant had been a member of the Nazi Party, was fanatically antiSemitic, believed that all Jews should be exterminated, and that he would require plaintiff to cease socializing with all her Jewish friends, and had the defendant not been guilty of said fraudulent concealment.”
A pleading, the ¡sufficiency of which is being tested,£ 1 is deemed to allege whatever can be implied from its statements by fair intendment and the whole of it must be considered.” (Howard Stores Corp. v. Pope, 1 N Y 2d 110, 114.) All of the allegations, for the purpose of such a motion, must be assumed to be true, and the cause of action must stand ££ £ ££ If in any aspect upon the facts stated the plaintiff is entitled to a recovery ” * * * The whole of the pleading must be considered * * * [it] is deemed to allege ££ whatever can be implied from its statements by fair and reasonable intendment ” * * * The question * * * is whether [there] ££ can be fairly gathered from all the averments ” * * * the requisite allegations of any valid cause of action cognizable by the state courts ’ ” (Dulberg *194 v. Mock, 1 N Y 2d 54, 56, quoting from Condon v. Associated Hosp. Serv., 287 N. Y. 411, 414). As stated in the Dulberg case (p. 57), “ Whether or no plaintiff will he able to establish such allegations is beside the point at this pleading stage.”
Bearing these principles in mind, we hold that this portion of the amended complaint states a cause of action. In Shonfeld v. Shonfeld (260 N. Y. 477) an annulment was granted under section 1139 of the Civil Practice Act (now Domestic Relations Law, § 140, subd. [e]), husband against wife, where the former had stated that he was in no position to marry because he was not able to make a living, in response to which the defendant had stated fraudulently that, if it was merely a matter of sufficient money to establish him in a business of his own, she had enough, if such an opportunity presented itself. The opportunity did arise, but she refused to advance the money before marriage, and the trial court had found as facts that the representations thus made were false, were believed and relied upon, and induced the plaintiff’s consent to the marriage, and that if they had not been made he would not have consented. The case reached this court in the posture that a decree of annulment had been refused upon the ground that these representations did not go “to the essence of the marriage contract.”
The decree was granted in this court upon the ground that, if the true facts had been known to the husband, he would not have entered into the marriage. “ The obligation of a husband to support a wife is no less lightly to be entered into than the other obligations of the marital relation. The ability to support is correspondingly important. * * * The business which defendant’s mythical money was to establish was plaintiff’s only prospect of supporting her. The misrepresentation was not a mere exaggeration or misstatement of her means or prospects, which might or might not be an incentive to marriage. It was a definite statement of an existing fact without which, as defendant clearly understood, no marriage was presently practicable ” (supra, p. 482).
The development of the law of annulment was reviewed, the court pointing out (pp. 479-480) that the fraud need no longer “ necessarily concern what is commonly called the essentials of the marriage relation — the rights and duties connected with cohabitation and consortium attached by law to the marital *195 status, (di Lorenzo v. di Lorenzo, supra [174 N. Y. 467]; Beard v. Beard, 238 N. Y. 599; Domschke v. Domschke, 138 App. Div. 454). Any fraud is adequate which is ‘ material, to that degree that, had it not been practiced, the party deceived would not have consented to the marriage ’ (di Lorenzo v. di Lorenzo, supra, p. 471), and is ‘ of such a nature as to deceive an ordinarily prudent person.’ (Id. p. 474.) ” (See Woronzoff-Daschkoff v. Woronzoff-Daschkoff, 303 N. Y. 506, 511). Although it is not enough to show merely that one partner married for money and was disappointed (Woronzoff-Daschkoff v. Woronzoff-Daschkoff, supra, p. 512), and the decisions upon the subject of annulment of marriage have not always been uniform, there have been circumstances where misrepresentation of love and affection, with intention to make a home, were held sufficient (Schinker v. Schinker, 271 App. Div. 688), likewise in case of fraudulent misrepresentations concerning the legitimacy of children of the wife by a supposedly prior marriage (Domschke v. Domschke, 138 App. Div. 154), or concerning prior marital status (Smith v. Smith, 273 App. Div. 987). Concealment of prior marital status was held to be sufficient in Costello v. Costello (155 Misc. 28); concealment of affliction with tuberculosis in Yelin v. Yelin (142 Misc. 533) and Sobol v. Sobol (88 Misc. 277); failure to reveal treatment of a mental disorder (schizophrenia, catatonic type) was held to be enough in Schaeffer v. Schaeffer (20 Misc 2d 662); material misrepresentation of age in Tacchi v. Tacchi (47 Misc 2d 996); fraudulent promise to become a United States citizen in Siecht v. Siecht (41 N. Y. S. 2d 393), where after years of married life the husband learned that his wife was a member of the Deutsche Bund and that her failure to become a citizen had been deliberate because of disloyalty to the United States. In Laage v. Laage (176 Misc. 190), an annulment was granted to a wife by reason of the husband’s false representation that he was a naturalized American citizen, after she had stated to him that she would not marry a German-born alien. In Brillis v. Brillis (207 Misc. 104, affd. 3 A D 2d 662), a marriage was annulled where the evidence established that the defendant did not intend, at the time when he induced plaintiff’s consent to the marriage, to establish a home for his wife and to support her, and that his purpose in entering into the marriage, unknown to plaintiff, was to facilitate his re-entry *196 into the United States from G-reece as a nonquota immigrant. In Harris v. Harris (201 App. Div. 880), an annulment was granted on account of the concealment by the husband of previous criminal activities. A recent annulment suit in this court was Sophian v. Von Linde (22 A D 2d 34, affd. 16 N Y 2d 785 [July 9,1965]). Although a third cause of action was sustained that the defendant misrepresented his intentions to have normal sexual relations with his wife, the first cause of action was also sustained (see opinion at Appellate Division, p. 35) based on misrepresentation by the defendant of his age, origin and ancestry. We affirmed, notwithstanding the dissent of two Justices at the Appellate Division based on Lapides v. Lapides (254 N. Y. 73, 80) and other decisions holding or purporting to hold that misrepresentations of the nature alleged in the Sophian first cause of action were not vital to the marriage relationship.
Marriage is a civil contract (Domestic Relations Law, § 10) and, as stated in Shonfeld v. Shonfeld (supra, p. 479): “ The essentials of marriage as a civil contract are, therefore, (a) consent by (b) parties having statutory capacity to give it. Any lack in those essentials makes the marriage void (Dom. Rel. Law, §§ 5 and 6) or voidable (Id. § 7). If either party consents by reason of fraud there is no reality of consent. Hence the marriage is voidable (Id. § 7, subd. 4) and an action may be maintained to annul it.”
Under these principles, if the facts stated in the second cause of action of this amended complaint are true (as we are bound to assume for the purposes of this appeal), the trier of the fact might well conclude that there was no reality to the consent of plaintiff to this marriage. Allowing the pleading the broad construction to which it is entitled under the law, defendant had not merely been a member of the Nazi party and an officer in the German Army during World War II, which in themselves would be insufficient to sustain an annulment, but also, as an individual, he was fanatically anti-Semitic and supported the extermination of the Jewish people. In spite of the fact that he believed in, advocated and approved such genocide, he nevertheless, during courtship, according to the complaint, maintained an “apparent * * * absence of fanatic anti-Semitism” from which it would appear that, if true, he put on a false front *197 to obtain plaintiff’s hand in that he dissembled his genocidal beliefs by seemingly associating agreeably with Jews.
Plaintiff alleges that she relied on this, and would not have married him had she known his true nature, in these respects, which he manifested “ after and during the marriage so as to make the marital relationship unworkable.”
These allegations go beyond merely requiring “ a wife, in order to preserve marital harmony, to give up friendships which she had made in the past ”, or asking the courts to “ lay down a viable line of separation between political and philosophical views too extreme to be concealed during the courting relationship from those not so extreme which may be concealed intentionally or inadvertently without impairing the agreement to marry ” as said by the Appellate Division majority (22 A D 2d, p. 471). A fanatical conviction, to be effectuated where possible through the mobilization of superior force, that a race or group of people living in the same community should be put to death as at Auschwitz, Belsen, Dachau or Buchenwald, evinces a diseased mind and makeup which parallels the ground for annulment stated in subdivision (c) of section 140 of the Domestic Relations Law, where a party to the marriage is an idiot or lunatic.
The continuation of defendant’s addiction to this anti-social and fanatical objective after and during marriage, which had been concealed and inferentially misrepresented during courtship, would so plainly make the marital relationship unworkable in this jurisdiction, where the marriage was contracted, that it would depart from the realities to conclude that it was not essential to this married relationship, or that, to defendant’s knowledge, plaintiff would have consented to the marriage without its concealment. At least the trier of the fact could so find if evidence is adduced to sustain the allegations of the second cause of action in this pleading. As was said in the dissenting opinion at the Appellate Division, quoting from Justice Loreto at Special Term, “‘These are more than distasteful beliefs; they are absolutely repugnant and insufferable * * *. A fraud with respect to such beliefs, inducing marriage, is one affecting a vital aspect of the marital relationship. At least, it may be so determined upon a trial. It might well be found to be ‘ ‘ material to that degree that, had it not been practiced, the party deceived would not have consented to the marriage ” and *198 is of such a nature as to deceive an “ ordinarily prudent person ” (di Lorenzo v. di Lorenzo, 174 N. Y. 467, 471, 473; Shonfeld v. Shonfeld, 260 N. Y. 477).’ ”
We are not called upon at this stage of the litigation to determine whether plaintiff will succeed in establishing these allegations at the trial. She should not be denied her day in court, however, on the basis that it could not be found at the trial that the facts alleged, if established by evidence, would go to the essence of her consent to marry him.
The order appealed from should be reversed and that of Special Term reinstated, without costs.
Judges Dye, Fuld and Bergan concur with Judge Van Voorhis; Chief Judge Desmond and Judges Burke and Scileppi dissent and vote to affirm upon the majority opinion at the Appellate Division.
Order reversed, etc.