Edward A. MITCHELL, Jr., Appellant,

v.

Katie M. MITCHELL, Appellee.

No. 6679.

District of Columbia Court of Appeals.

Argued Feb. 7, 1973.

Decided Nov. 2, 1973.

Ben Paul Noble, Washington, D. C., with whom Thomas O. Mann and Craig T. Sawyer, Washington, D. C., were on the brief, for appellant.

Hamilton W. Kenner, Washington, D. C., for appellee.

Before REILLY, Chief Judge, GALLAGHER, Associate Judge, and QUINN, Associate Judge, retired.

GALLAGHER, Associate Judge:

This is an appeal from a judgment granting plaintiff-appellant Edward A. Mitchell, Jr., an absolute divorce on the ground of voluntary separation for a period exceeding one year but declining to declare the marriage void and refusing to grant an annulment of the marriage. In addition, the trial court declined to set aside or modify an order of support for the wife granted in a prior reciprocal support proceeding. Appellant has not and does not challenge any order of support for the benefit of his child. Appellant's main attack is directed at the continued vitality of that support order, adopted and continued by the trial court in this proceeding, as it pertains to support of the wife.

Plaintiff Edward A. Mitchell, Jr., and defendant Katie M. Mitchell, a New York resident, were first married on February 1, 1959, in New York City. Plaintiff at that time was lawfully married to another woman and defendant was pregnant with his child. Plaintiff's prior marriage was terminated by a decree of divorce entered on July 27, 1962.

On October 29, 1962, plaintiff and defendant entered into an antenuptial agreement with the stated purpose of legitimizing and acknowledging their child. The agreement recited that, this being the sole purpose of the contemplated second marriage to defendant, there would be no obligation for support or maintenance of the wife. Another provision purported to release each party from any obligation of alimony or claims to the property of the other. The husband's obligation to support the child during his minority was recited in the agreement.

Subsequently, the parties entered into the contemplated second marriage on February 9, 1963 in Yonkers, New York. Plaintiff returned to the District of Columbia and the marriage was never consummated nor did the parties ever live together as man and wife. From the date of his second marriage appellant provided monthly support for his child and, in addition, provided a group health insurance policy for his son's benefit as stipulated in the agreement. Because the child must undergo psychotherapy (partially covered by the insurance) and be enrolled in a special school, expenses often exceeded the amount of support received.

On February 9, 1971, defendant Katie M. Mitchell brought an action in New York for support pursuant to the Uniform Support of Dependents Law of New York[1] and the Uniform Support Law of the District of Columbia.[2] Appellant interposed in this jurisdiction the antenuptial agreement of October 29, 1962, as a defense to the wife's plea for support and

1. N.Y.Dom.Rel.Law Art. 3–A (McKinney 1964), McKinney's Consol.Laws, c. 14.

2. D.C.Code 1973, § 30–301 et seq.

maintenance for herself. Having found that agreement to be void under the laws of the State of New York,[3] the Reciprocal Support court ordered the husband to pay support to both wife and child in the amount of $450.00 per month.[4] Appellant took no appeal from that order.

Subsequent to the proceeding in the Reciprocal Support action, but prior to the entry of the order in that proceeding, appellant brought this action in the Family Division of the Superior Court of the District of Columbia for a divorce based upon the ground of voluntary separation for a period greater than one year. He was allowed to amend his complaint to seek a judgment declaring the marriage of the parties to be void on the basis that there was fraud in the execution of the contract of marriage. He further amended to seek an annulment on the ground that the marriage had not been consummated and that there had been no cohabitation. It was also asked that the Reciprocal Support order be set aside or modified pursuant to Super.Ct.Dom.Rel.R. 60, on the basis that his failure to raise the issues of invalidity and annulment in the prior Reciprocal Support action was due to mistake, excusable neglect or inadvertence. As stated previously, appellant does not challenge the amount of support ordered but only the designation of his wife as a recipient thereof.

The court heard argument on the issue of annulment and on whether the marriage should be declared void. The court then reserved judgment and proceeded to trial on the issue of voluntary separation in excess of one year and subsequently ruled that appellant was entitled to an absolute divorce on that ground.

The court then found that as a matter of New York law, appellant was not entitled

to an annulment and that he had not borne the burden of proving by clear and convincing evidence that the marriage should be declared void. The court further found that it would not be justified in setting aside or modifying the Reciprocal Support decree. From these findings adverse to him plaintiff appeals, concentrating his attack, as far as the court's decree is concerned, on the provision which provides support for the wife.

In seeking an annulment or a declaration that the marriage is void, appellant in the trial court relied primarily on the agreement which recites that the marriage was to legitimize their child and spells out his duties to his child and wife. It was appellant's contention that the child was legitimate from birth, and that the second marriage for the "limited purpose" of legitimizing the child was therefore entered into under a mistake of law which vitiated his consent to the marriage.

Both parties have proceeded on the assumption that inasmuch as their son was born during their first (albeit bigamous and so known to both) marriage, he was legitimate. They find support for this proposition in N.Y.Dom.Rel.Law § 33 (McKinney 1964) which provides in part:

*For the purposes of this article:*

1. A child or children born of parents who, at any time prior or subsequent to the birth of such child, have entered into a civil or religious ceremony, shall be deemed the legitimate child or children of both parents, regardless of the validity of such marriage.

Inasmuch as Article 3–A (of which Section 33 is a part) is directed only toward the duty of support, the above cited provision is inapposite to the broader issue of the legitimacy of the child.

3. N.Y.Gen.Obligations Law § 5–311 (McKinney 1964), McKinney's Consol.Laws, c. 24–A, provides in part:
 A husband and wife cannot contract to alter or dissolve the marriage or to relieve the hus-

band from his liability to support his wife
 . . . .

4. Mitchell v. Mitchell, Civil No. RS 561–70R (D.C.Super.Ct., April 29, 1971).

More appropriate to the issue of legitimacy is N.Y.Dom.Rel.Law § 24 (McKinney 1964) which read at the time of the second marriage:

> All illegitimate children whose parents have heretofore intermarried or who shall hereafter intermarry shall thereby become legitimatized and shall become for all purposes the legitimate children of both parents and entitled to all the rights and privileges of legitimate children . . . .

This statute was interpreted by the courts of New York to contemplate a valid marriage, not a void (bigamous) marriage as was the parties' first marriage. People ex rel. Meredith v. Meredith, 272 App.Div. 79, 69 N.Y.S.2d 462, 465, aff'd, 297 N.Y. 692, 77 N.E.2d 8 (1947); see Olmsted v. Olmsted, 190 N.Y. 458, 83 N.E. 569 (1909), aff'd, 216 U.S. 386, 30 S.Ct. 292, 54 L.Ed. 530 (1910); McCarter v. McCarter, 227 N.Y.S.2d 608 (Sup.Ct.1962); see also N.Y.Dom.Rel.Law § 145 (McKinney 1964). In 1969, Section 24 and Section 145 were repealed to overrule the above cited line of cases, N.Y.L. 1969, c. 325, § 1, eff. April 30, 1969, but that repealer has no effect on the issue as we must look to the law as it was at the time of the second marriage in determining whether it was void due to lack of consent. Therefore, since the supposition of legitimacy upon which appellant advanced his mistake of law theory in the trial court was without basis, that argument has no force here.

Appellant contends that appellee's failure to abide by the antenuptial agreement (by seeking support and now alimony) indicates an intent on her part not to abide by it from its inception. Appellant is arguing that his consent to the marriage was procured through fraud.

"Since the marriage was performed in New York, the question of its validity is governed by the substantive law of that state." Jwaideh v. Jwaideh, D.C.Mun.App., 140 A.2d 303, 304–305 (1958); see Osborne v. Osborne, D.C.Mun.App., 134 A.2d 438 (1957). In New York, "[a]nnulment, like divorce, is wholly statutory." Bishop v. Bishop, 62 Misc.2d 436, 308 N.Y.S.2d 998, 1000 (Sup.Ct.1970). N.Y.Dom.Rel.Law § 7 (McKinney 1964) provides in relevant part that:

> A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto:
>
> \* \* \* \* \* \*
>
> 4. Consent[s] to such marriage by reason of force, duress or fraud[.]
>
> \* \* \* \* \* \*

N.Y.Dom.Rel.Law § 140 (McKinney 1964) provides in relevant part:

> (e) Consent by force, duress or fraud. An action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by force or duress may be maintained at any time by the party whose consent was so obtained. An action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by fraud may be maintained by the party whose consent was so obtained . . . .

"Any fraud is adequate which is 'material, to that degree that, had it not been practiced, the party deceived would not have consented to the marriage', and is 'of such a nature as to deceive an ordinarily prudent person.'" Kober v. Kober, 16 N.Y.2d 191, 195, 264 N.Y.S.2d 364, 367, 211 N.E.2d 817, 819 (1965) (citations omitted).

Even had it been appellee's intent, *ab initio*, not to abide by their agreement "[i]t would appear that a false representation to fulfill a contract, *which contract violates the public policy of [New York]*, should not be a ground for an action to annul a marriage for fraud." Nilsen v. Nilsen, 66 N.Y.S.2d 204, 206 (Sup.Ct.1946). (Emphasis supplied.)

It is uncontroverted that the parties never cohabited. The marriage was kept intact for nine years and during this period

the benefits of public reputation and joint tax return filing were enjoyed. The lack of consummation of the marriage and cohabitation are, however, not controlling in New York State on whether to grant an annulment where the parties never intended, after their second marriage, to enjoy these incidents of the union. Bishop v. Bishop, *supra.* "[Appellant] cannot be said to be defrauded where [he, himself] agreed to the very course of conduct which was followed. . . . The situation in which these parties find themselves is entirely of their own making. If a fraud has occurred, they are the parties who purposely and intentionally brought it about." Erickson v. Erickson, 48 N.Y.S.2d 588, 589–590 (Sup.Ct.1944); *see also* Sheils v. Sheils, 32 App.Div.2d 253, 301 N.Y.S.2d 372, 374 (1969).

Since the argument of appellant does not fall within the parameters of the New York decisions, we find no error in the trial court's application of the law to the facts of this case.

Appellant argues further that the Reciprocal Support court had no jurisdiction to determine the validity of the antenuptial agreement as it pertained to alimony and that the trial court in this proceeding erred in not permitting him to litigate the validity of the agreement on that point.

■ The agreement provided that "each party shall be fully released by the other from any obligation for alimony . . . ." As it is not disputed by the parties that the law of New York governs this agreement, the answer to this argument is that in New York a "husband's obligation to support his wife continues after divorce [and] any separation agreement relieving him of his obligation or construed or applied so to relieve him is void under [Section 5–311 of the General Obligations Law]". McMains v. McMains, 15 N.Y.2d 283, 285, 258 N.Y.S.2d 93, 95, 206 N.E.2d 185, 187 (1965). An agreement will be upheld where it provides " 'for regular, substantial, periodic payments' to the wife as a measure of the husband's continuing obligation to support her. But, such an agreement aside, contracts which entirely or partially exonerate the husband or which 'release' him from his obligation or 'diminish it' are condemned as void", Haas v. Haas, 298 N.Y. 69, 72, 80 N.E.2d 337, 339 (1948) (citations omitted), and it was therefore within the power of the trial court to disregard the agreement and thereby upset the arrangement of the parties. *See, e. g.,* Ripley v. Ripley, 30 A.D.2d 782, 783, 291 N.Y.S.2d 596, 597 (1968), aff'd mem., 24 N.Y.2d 770, 300 N.Y.S.2d 39, 247 N.E.2d 859 (1969); Simmons v. Simmons, 63 Misc.2d 693, 694, 313 N.Y.S.2d 844, 845 (1970).

As his final contention, appellant urges that inasmuch as the marriage has now been terminated, by absolute divorce, the duty of "support" ceases and that any duty arising after the marriage is "alimony." The trial court, appellant argues, simply adopted the result of the Reciprocal Support act proceedings as its own, without regard to the issue of whether the wife had a right to receive alimony.

■ While the order of the trial court does not use the word "alimony," the fact remains the court heard evidence on the issue of whether alimony should be granted and the amount thereof.[5] Consequently, it is not fatal error for the court to have used the word "support" in lieu of "alimony." On this record, there is no magic in the words themselves. *See* Brady v. Brady, 151 W.Va. 900, 158 S.E.2d 359, 364 (1967). "These terms are frequently used interchangeably." Ward v. Ward, 104 Ohio App. 105, 140 N.E.2d 906, 907 (1956).

5. The term support was used, throughout, by counsel for both parties in the trial court. The word alimony appears only after appellant's counsel requested that "a plain allocation be made in any order as far as support between the child and the wife [is concerned]." Counsel for appellee then replied:

> I think, Your Honor, what counsel is aiming at is if it's alimony she pays the tax, and if it's not he pays the tax. Of course, I would like to have him pay the tax, because we're already getting an amount which is inadequate for the support of the child. Whatever it's called, in fact it will be devoted to the child support. (Tr–49)

And "[w]e do not conclude the trial court intended to blow hot and cold in the same breath by [continuing the support order] to the wife and simultaneously making that award ineffectual when granting [appellant] a divorce." Martens v. Martens, 364 P.2d 995, 997 (Wyo.1961).

■ The court concluded that it would not modify the order of support at the time of the decree of divorce[6] and it was noted in the trial court's Memorandum Opinion and Order that the matter is always reviewable upon a future change of conditions.[7] Though it would have been better practice for the court to specify how much of the amount was alimony for the wife, failure to do so was not fatal. *See* Ruthenberg v. Ruthenberg, 229 Md. 118, 182 A.2d 347, 48 (1962) and *see also* Nelson, Divorce and Annulment, § 14.75 (1961).[8] It would appear, however, that on motion by either party the order should be modified to show the amounts allocated.

Affirmed.

---

6. *See* Super.Ct.Dom.Rel.R. 401(b)(4).

7. D.C.Code 1973, § 16–914.

8. In addition, *see* Annot., 2 A.L.R.3d 596 (1965), where some split of authority on this

question is evident and the effects of an undivided award on future litigation and on present tax liability are described.