Rosalind S. Wells, Appellant, v Shearson Lehman/American Express, Inc., et al., Respondents.

First Department, April 9, 1987

APPEARANCES OF COUNSEL

*Sidney B. Silverman* of counsel *(Silverman & Harnes,* attorneys), for appellant.

*Mark E. Davidson* of counsel *(Leon P. Gold* and *Clifford L.*

*Thau* with him on the brief; *Shea & Gould,* attorneys), for respondents.

## OPINION OF THE COURT

KUPFERMAN, J.

In 1984, the principal officers of Metromedia paid approximately $1.1 billion for the company's publicly held shares. This was the culmination of a process begun in December 1983. At that time, Metromedia's management announced a buyout proposal. Following that announcement, nine separate stockholders brought suit in Delaware, alleging the price offered was inadequate. In March 1984, the parties settled, securing somewhat better terms for the stockholders. The settlement agreement contained a release from future claims for the defendants therein and their "officers, directors, agents, attorneys, representatives * * * or * * * anyone else". Plaintiff-appellant, in the instant case, Rosalind Wells, was one of the plaintiffs in the Delaware litigation. The defendants-respondents, Shearson Lehman and Bear Stearns, were not defendants in the previous litigation, nor were they specifically mentioned in the release.

Nevertheless, Shearson Lehman and Bear Stearns were tangentially involved in the buyout process in the following manner: after plaintiffs filed the Delaware lawsuits, Metromedia selected four of its directors to form a committee to evaluate the fairness of the buyout. This committee hired Shearson Lehman and Bear Stearns to give their opinion on that issue for the stockholders. Before the settlement, Shearson Lehman and Bear Stearns rendered an opinion that the total assets of the corporation were worth $1.114 billion. Later, their opinion was included in proxy material sent to shareholders. On the basis of that proxy material, the shareholders voted overwhelmingly to approve management's buyout.

Allegedly, Metromedia paid Shearson Lehman $750,000 for its opinion, $685,000 in brokers fees, and agreed to pay an additional $3.2 million if the merger went through. Allegedly, Metromedia paid Bear Stearns $500,000 for its opinion and agreed to pay an additional $2 million if the merger were effected. Additionally, through a special deal on the stock price, it allegedly provided Bear Stearns the opportunity to realize an $8.1 million trading profit.

Within a year of the buyout, Metromedia sold its television

assets (one portion of the company) for $2 billion, or $886 million more than Shearson Lehman and Bear Stearns had valued all Metromedia's assets. Subsequently, Metromedia sold most of its remaining assets for $2.5 billion, for a total of $4.5 billion.

Ms. Wells who, as mentioned, had been a plaintiff in the Delaware litigation, brought suit in New York against Shearson Lehman and Bear Stearns. She claims defendants either failed to use due care or intentionally issued erroneous opinions with the motive that only an opinion favorable toward the merger would bring them substantial monetary gain. Defendants moved to dismiss the complaint on two grounds: (1) defendants were covered by the release in the Delaware litigation, and (2) plaintiff failed to state a cause of action. The Supreme Court granted that motion. We disagree, reverse, and deny the motion.

A conflict occurs here over whether to construe the release under the laws of Delaware or those of New York. Delaware's version of the Uniform Contribution Among Joint Tortfeasors Act provides that a release to one joint tort-feasor does not release the other "unless the release so provides". (Del Code Annot, tit 10, § 6304 [a].) This has been interpreted to mean that the plain language of a release will not be automatically followed "when one not a party to the release seeks to benefit from its general language." *(Sellon v General Motors Corp.,* 521 F Supp 978, 983 [D Del 1981].) What controls is the intent of the parties to the release *(supra).* The New York statute is more restrictive than Delaware's. It states that a release "does not discharge any of the other tortfeasors * * * unless its terms expressly so provide". (General Obligations Law § 15-108 [a].) In our view, we need not reach a conclusion as to which law applies, because, at the very least, the question of intent must first be reached, that is, did the parties, including plaintiff-appellant, intend that Shearson Lehman and Bear Stearns be released?

The other issue before us is whether plaintiff states a cause of action. On a motion to dismiss for legal insufficiency, we must deem the factual allegations to be true and accord them every favorable inference. *(Kober v Kober,* 16 NY2d 191.) Plaintiffs claim that they, as stockholders, lost money due to the negligent or wrongful preparation of defendants' opinion. Shearson Lehman and Bear Stearns make the untenable assertion that they represented the officers and therefore were not in privity to the shareholders. The officers, however,

created a committee whose purpose was to serve the shareholders by determining the fairness of the buyout. The committee hired Shearson Lehman and Bear Stearns. Anybody hired by the committee, aiding in its endeavor, was actually retained to advise the shareholders. Assuming Ms. Wells' complaint is true, and assuming Shearson Lehman and Bear Stearns were aware (as they must have been) that their opinion would be used to help shareholders decide on the fairness of Metromedia's stock offer, they can be liable to the shareholders. *(Credit Alliance Corp. v Andersen & Co.,* 65 NY2d 536.)

Accordingly, the judgment and order (one paper) of the Supreme Court, New York County (William P. McCooe, J.), entered on February 6, 1986, which granted defendants' motion to dismiss the complaint, should be reversed, on the law, and the motion denied, with costs.

MURPHY, P. J., ROSS, MILONAS and ELLERIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on February 6, 1986, unanimously reversed, on the law, and the motion to dismiss the complaint denied. Appellant shall recover of respondents $75 costs and disbursements of this appeal.