■ LAZ SCHNEIDER et al., Respondents, v LAZARD FRERES & Co. et al., Appellants.—Order, Supreme Court, New York County (Francis N. Pecora, J.), entered August 25, 1989, which denied defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) or, in the alternative, to either dismiss the complaint pursuant to CPLR 3211 (a) (4) or stay the action pursuant to CPLR 2201, unanimously modified, on the law, the facts and in the exercise of discretion, to stay the action pursuant to CPLR 2201 pending final determination of the action pending in the Court of Chancery, State of Delaware, New Castle County, entitled *In re RJR Nabisco, Inc. Shareholders Litig.,* and is otherwise affirmed, without costs.

Plaintiffs, a group of shareholders in RJR Nabisco, Inc., a Delaware corporation, claim that an unfairly conducted auction of RJR stock resulted in the acceptance of a bid by the RJR board of directors more than $1 billion less than what could have been obtained by a fair auction. They sued the RJR board and the successful bidder, Kohlberg, Kravis, Roberts & Co., in the Delaware Court of Chancery for an injunction against consummation of the tender offer Kohlberg won the right to make as high bidder; in the alternative, the shareholders requested damages in the event an injunction against the tender offer was no longer feasible at the time of trial. The gist of the Delaware action is that the auction, which was run by a special committee of disinterested RJR directors, was prematurely terminated at a point when a management-led group of bidders should have been expected to respond to the Kohlberg bid declared as the winner. As the shareholders explain, the practical effect of the relief sought

in the Delaware action would be to revive the auction. When a motion by the shareholders for a preliminary injunction in the Delaware action was denied, they brought the instant action in New York against the two investment bankers hired by the special committee to advise it in conducting the auction, Lazard Freres & Co. and Dillon Read & Co., Inc., the gist of which is that the special committee conducted the auction in the unfair manner it did because of faulty advice given to it by the bankers. More particularly, the shareholders allege that the bankers advised the special committee that the final bids submitted by Kohlberg and the management group were "substantially equivalent from a financial point of view" when, in fact, the latter was superior; alternatively, the shareholders allege that if the management group's bid was inferior, then, given the dynamics of the auction, the bankers should have advised the special committee to invite another bid from the management group or, if the two bids were, as they were represented to be, substantially equivalent in value, then the bankers should have advised the special committee to solicit a set of tie-breaking bids. The failure to invite tie-breaking bids is presented only as the final and most egregious example of an auction that was throughout run in a way to give Kohlberg an unfair advantage over the management group.

The bankers moved before IAS for an order dismissing the complaint for failure to state a cause of action, their main argument being that their advice was addressed to the special committee, not the shareholders, and that they therefore owed no duty to the shareholders to render nonnegligent advice; in addition, the bankers argued that if they did owe a duty of care to the shareholders, the complaint does not allege how it was breached. In the alternative, the bankers asked IAS to either dismiss the action upon condition that they intervene in the earlier-commenced Delaware action, or stay the New York action to abide the outcome of the Delaware action. IAS denied the motion in all respects and the bankers took the instant appeal. Shortly thereafter, before the appeal was argued, the bankers made a motion in the Delaware action to intervene therein, claiming a right to do so in that their interests were not being adequately represented by the RJR directors named as defendants. The shareholders' response was to make a motion in this court "for an injunction *pendente lite* enjoining and restraining appellants from proceeding with their motion to intervene in a Delaware Chancery Court proceeding", which motion was submitted on the same

day the instant appeal was argued. Shortly after the appeal was argued, the Delaware court, ruling on the bankers' motion to intervene, held that while they do not have a right to intervene, the court does have the discretion to permit it, and citing comity, it denied intervention on the ground that it is for the courts of New York to decide where the dispute between the shareholders and the bankers should be decided; however, the Delaware court also indicated that it would be inclined to reconsider the question of intervention were the New York courts to decide that Delaware is a better forum.

Addressing ourselves first to the matter put to us by the Delaware court, we think the dispute between the shareholders and the bankers should be decided in New York. The shareholders believe they stand a better chance of success in New York than Delaware, and therefore prefer New York over Delaware as a forum notwithstanding the pendency in Delaware of an earlier-commenced, fairly well-advanced, highly related action that they themselves instituted. Some of their reasons for preferring New York appear to be valid considerations in selecting a forum, such as, they say, the right to a jury trial in New York but not Delaware, and the potential for class action certification in New York but not Delaware, but we do not think it appropriate to question the shareholders too closely on their reasons for rejecting the bankers' offer to submit the dispute to the Delaware court. If it is forum shopping that the shareholders are engaged in, the forum they selected happens to be the one whose substantive law concededly governs the dispute no matter where it is to be decided; New York also happens to be the bankers' residence and the place where the allegedly negligent advice was given. Because of these significant contacts, we think the shareholders' preference for New York should be respected, although our decision to entertain the action and not, in effect, consolidate it with the Delaware action is made easier knowing that the potential loss of the procedural economies normally to be gained whenever two related actions are consolidated can be hedged with a stay. And, if the Delaware action should turn out not to have a significant preclusive effect on the shareholders in this action, the procedural economies lost by not having the two actions decided together in a single forum are simply to be understood as the price extracted by a Federal system when more than one jurisdiction has significant contacts with a single transaction.

We stay the New York action because the Delaware action raises numerous possibilities for the application of collateral

estoppel, and there may not be very much left for New York to decide in the dispute between the shareholders and the bankers once Delaware is finished with the dispute between the shareholders and the RJR board. We cannot say with precision exactly what the Delaware court will be deciding, but we do have what we think is a very good guide in the Delaware court's decision on the shareholders' motion for a preliminary injunction. That decision informs us that while several alternative theories are offered by the shareholders why the directors should be held liable for having accepted the Kohlberg bid, it is crucial to the shareholders' case that the bankers' valuation of the final bids as substantially equivalent be shown to have been "implausible", and that the shareholders are not likely to prevail unless they make such a showing. Apparently, under Delaware law, directors are entitled to rely on the advice of experts when specialized knowledge is necessary in making a business judgment, unless the advice is implausible. It is hardly beyond the realm of possibility, indeed it is likely, that the shareholders, in order to show implausibility in the Delaware action, will be adducing the same financial facts they charge the bankers with "ignoring or failing to give proper consideration to" in this action, i.e., the midpoints of the respective bids, their cash differential, the antitrust problems associated with the Kohlberg bid, the face amount of the "PIK" (payment-in-kind) securities, proposed divestitures, the discount value of option features, the bankers' own computer analysis of the conversion feature of the Kohlberg bid, and the tax consequences of the two proposed mergers.

Whether a finding of plausibility in the Delaware action will estop the shareholders from asserting these financial facts in this action for the purpose of showing that the bankers' representation of substantial equivalence was negligent is a question we do not address at this point; we think it more pertinent to realize that decision making does not always lend itself to neat compartmentalization, and that the Delaware court's inquiry into plausibility could well end up with a finding, deliberately and advisedly made, with a full appreciation of its potential preclusive effect on the shareholders in this action, that it was not only plausible for the bankers to say that the final bids were substantially equivalent, but that the proposition was a decidedly correct one. Such a finding would perforce preclude the shareholders from asserting that the bankers' valuation was negligent. To be sure, a proposition can be plausible yet incorrect, but that does not mean that if

the Delaware court goes further than is logically necessary, and finds the bankers' statement of financial equivalence to be not merely plausible but correct, that such a finding would necessarily lack collateral estoppel effect *(see, Molloy v Trombley,* 50 NY2d 46; *O'Connor v G & R Packing Co.,* 53 NY2d 278, 282-283).

Similarly, with respect to whether the special committee's decision not to invite tie-breaking bids affords a basis for holding the directors liable, the Delaware court, while stating that it would be necessary for it to decide only whether such a decision was consistent with a good-faith motive to obtain the highest possible price, also indicated that developing case law in Delaware might constrain it to decide instead whether the auction was effective in obtaining the highest possible price, that is, whether the failure to invite tie-breaking bids rendered the auction per se unfair, and thus a legal nullity, notwithstanding that the special committee thought it was doing all it could to obtain the highest possible price. Indeed, even if the Delaware court should not be so constrained, who can say that it will not put the question of good faith aside, preferring instead to decide the dispute on the basis that the highest possible price was in any event obtained? A decision that the auction was effective in obtaining the highest possible price would undermine the shareholders' argument that tie-breaking bids should have been invited as completely as a finding that the bids were substantially equivalent would undermine their argument that the bankers' valuation was negligent.

Indeed, it might even happen that the shareholders will prevail in Delaware and obtain the injunctive relief they seek there, in which event the money relief they seek here would become superfluous. It makes little sense to go full steam ahead with an action when the plaintiff stands to be made whole in another action, and this is so even when the other action is against a different defendant. If it is the shareholders' argument that this action should go forward because they stand little chance of success in the Delaware action they themselves instituted, that would be an argument most difficult to accept.

Turning to whether the bankers owed the shareholders a duty of care, the argument on this question is somewhat distractingly presented mainly in terms of whether the relationship between the shareholders and the bankers was or was not one "approaching privity" within the meaning of *Credit Alliance Corp. v Andersen & Co.* (65 NY2d 536). No claim is

made by the shareholders that any of them actually relied on any advice the bankers gave the special committee concerning either the conduct of the auction or the relative values of the competing bids. Nor is there any allegation that any such advice was passed on, or intended to be passed on, to any of the shareholders for the purpose of influencing them to take any particular action in connection with the auction. On the contrary, underlying the complaint is the notion that it was the expectation of all concerned that the shareholders were not to do anything other than passively follow the recommendation of the special committee, which was set up specifically to protect their interests in the auction. Thus, the shareholders, in the complaint, speak of the special committee as "their" committee, the directors constituting it as their "representatives", and advice given to and relied on by the special committee as advice given to and relied on by the shareholders "acting through the Special Committee". Viewing the relationship between the shareholders and the special committee thus, that is, as one of principal and agent, we do not see how it can be said that a duty of care owed by the bankers to the special committee was not intended for the benefit of the shareholders. The existence of a fiduciary relationship between the special committee and the shareholders itself establishes the requisite privity between the shareholders and any persons in contractual privity with the special committee. We do not think it a startling proposition that a principal is in privity with his agent's agent, or with anyone else his agent deals with on his behalf *(see, Credit Alliance Corp. v Andersen & Co., supra,* at 550, n 9; 3 NY Jur 2d, Agency and Independent Contractors, § 271), so that a negligent statement made by a third person to an agent and relied on by the agent to the principal's detriment is actionable by the principal. In contrast, in the typical *Credit Alliance* situation, a negligent statement is made not to an agent, but by an agent, and is relied on by a third person outside of the agency relationship for purposes of entering into a transaction with the agent's principal.

In determining whether the bankers owed the shareholders a duty of care, we think the question is not whether the relationship between them was one approaching privity, but whether the relationship between the shareholders and the special committee was one governed by the law of agency or the law of corporations. The bankers argue that well-settled principles of corporate law make corporate management the responsibility and prerogative of the board, not the sharehold-

ers; that directors at all times, no more so in the present context than in others, act as fiduciaries for the shareholders, this being their reason for being; that it was for the RJR board to decide, in the exercise of its business judgment and as the shareholders' fiduciary, whether the bankers were negligent, and, if so, whether RJR should sue them for it; and that to permit this action to go forward would be to permit shareholders to decide whether any lawyer, accountant or other professional hired by a board to advise it with respect to corporate business should be sued for malpractice. We reject this argument because we agree with the shareholders that sale of the control of a corporation is not corporate business of the type governed by traditional principles of corporate governance, and that the special committee stood in a relationship to the shareholders different from that which normally obtains between a corporation's board and shareholders. The special committee's purpose was not to judge transactions accruing to the benefit of the corporate treasury; nor was it concerned with any matters affecting RJR's internal affairs. Rather, its purpose was to advise the shareholders with respect to a transaction that contemplated RJR's demise and whose end and aim was to obtain for the shareholders the highest possible price for their stock. In this "buyout" context, if something less than the highest possible price was obtained, the loss was sustained by the shareholders, not the corporation, and for that reason, we are of the view that the relationship between the shareholders and the special committee was essentially that of principal and agent on which principles of corporate law should not be superimposed (see, Wells v Shearson Lehman/American Express, 127 AD2d 200, 203, revd on other grounds 72 NY2d 11).

We agree with the shareholders that the complaint gives adequate notice of how the bankers were negligent. With respect to the valuation of the bids, the financial facts allegedly disregarded by the bankers are set forth with particularity, and it will be the shareholders' burden to show that a failure to consider these facts was a failure to exercise that degree of care that a reasonably prudent investment banker would have exercised under the same circumstances. With respect to the conduct of the auction, it will be necessary for the shareholders to show that a reasonably prudent person, intent on obtaining the highest possible price for the shareholders' stock, would not have conducted the auction in the manner advised by the bankers.

The shareholders' motion for an injunction against defen-

dants proceeding with their motion to intervene in the Delaware action is denied as academic. Concur—Kupferman, J. P., Milonas, Asch, Wallach and Rubin, JJ.